GEORGE THEIS, JR., v. THE BOARD OF COUNTY COMMIS-
SIONERS OF WASHITA COUNTY.

(Filed Feb. 7, 1900.)

1. MUNICIPAL INDEBTEDNESS—*Road and Bridge Purposes—Statutes 1890.*
Under the provisions of the statutes of 1890, the board of county
commissioners have no authority to create any indebtedness for
road and bridge purposes, and issue warrants as an evidence
thereof, unless they were first duly authorized to do so by a
majority vote of the people of the county.

2. ROAD AND BRIDGE WARRANTS—*Payment of—Special Funds.*     The
holders of road and bridge warrants issued in pursuance of a ma-
jority vote of the people as required by the provisions of the stat-
utes of 1890, providing for a special tax levy for the construction of
certain bridges, must look to the special fund created for the pur-
pose for the payment of said warrants.

3. SAME—*Collection of—Remedy—Mandamus.* Where the board of county
commissioners have issued road and bridge warrants in accordance
with the provisions of the statutes of 1890 for the construction of
certain bridges, and have failed or refused to make an annual tax
levy to liquidate said warrants, the remedy of the holders thereof
is by mandamus, and not by an action to recover a money judg-
ment thereon.

(Syllabus by the Court.)

*Error from the District Court of Washita     County;
before John C. Tarsney, District Judge.*

*Dille & Blake,* for plaintiff in error.

*John F. Stone,* for defendant in error.

STATEMENT OF THE CASE.

This was an action brought in the district court of
Washita county on December 11, 1896, by the plaintiff in

error, plaintiff in the court below, against the board of county commissioners of Washita county, to recover the sum of $4,405 upon fourteen county warrants issued to the parties named in said warrants, and subsequently assigned to the plaintiff, who was at the time of the commencement of this action the owner and holder of said warrants. All of said warrants, except the one set out in paragraph 11, in the plaintiff's cause of action, were issued on the road and bridge fund, and the warrant described in the eleventh paragraph of the plaintiff's petition was issued for supplies, blanks, books etc., and drawn upon the general fund of the county.

After the issues were joined the cause was tried upon the following stipulation, (omitting caption):

"And now on this 31st day of March, 1898, the same being one of the days of the regular March, 1898, term of the above court, the above entitled cause coming on to be heard before Hon. John C. Tarsney, judge, and the plaintiff being present by Attorney John I. Dille, and the defendant being present by Attorney John F. Stone, the following agreement was entered into between parties, to-wit:

"This case is submitted to the court for decision upon the following agreed statement of facts and evidence introduced at the trial:

"It is agreed that the plaintiff is the owner, and is in possession of the warrants described in the plaintiff's petition, and that the same are due and unpaid; that each warrant was issued for the purposes therein stated; that the copy of each warrant and the indorsements thereon set out in the plaintiff's petition, are correct; that each of said warrants, prior to the beginning of this action, was presented for payment to the treasurer of said county, which payment was refused by said treasurer.

"It is agreed that all the warrants declared upon in the petition were issued prior to the 26th day of July, 1893, and the obligation in settlement of which such warrants were issued were incurred prior to that date; that the first assessment of taxable property of said county, for the purposes of territorial and county taxation, was completed on the 26th day of July, 1893, and the assessed valuation of said county was $132,908.

"That at the time such obligations were incurred and such warrants issued there was no cash in the treasury of said county, no taxes, levied, due or unpaid, and no license taxes due or payable out of which such obligations or any of them could be paid.

"It is stipulated and agreed that a copy of the list of warrants filed as an exhibit in the case of F. M. Hubble v. The Board of County Commissioners of Washita County, from the organization of said county, up to and including February 21, 1893, be filed as an exhibit in this case and marked exhitit 'A,' said exhibit to show all the warrants paid or cancelled prior to or on February 21, 1893.

"The warrants declared upon in the sixth, thirteenth and fourteenth paragraphs of plaintiff's petition were issued in part payment on a contract made with Clanton and Turner for the construction of three bridges; and warrant No. 250, declared upon in the tenth paragraph, was issued in part payment upon a contract entered into on the 23rd day of December, 1892, as shown by the record of the commissioner's proceedings.

"Defendant offers in evidence a certified transcript of the record of the commissioners proceedings, relating to roads and bridges, as found on pages 20, 24, 28, 31, 32, 44, 47, 48, 50, 52, 53, 54, 57, 62, 63, 64, 65, 66, 68, 69 filed herewith marked exhibit 'B.'

"It is agreed that the first tax levy made in said county was made in the year 1893, after the 26th day of July, and that the levy for road and bridge purposes was two

mills on the dollar, amounting to the sum of $265.82, of which $206.65 was collected.

"That the levy for the general fund was four mills on the dollar, amounting to $531.64, and from that and other sources the general county revenues were collected amounting to $701.69.

"Mr. Dille: Plaintiff offers in evidence the notice of election to determine on the construction of roads and bridges and the levy of taxes therefor, to be held October 1, 1892, and published in the Cloud Chief Herald, a newspaper of general circulation in Washita county, a copy of which is hereto attached, and marked exhibit 'C.'

"It is further agreed that not to exceed ten persons resided in Washita county, west of the line between ranges 17 and 18, on October 1, 1898; said territory being bridge election No. 2.

"By agreement the venue of this case is changed for further proceedings to Canadian county, O. T."

It appears from the record that on August 10, 1898, the court found for the plaintiff upon the second, third, fourth, fifth, seventh, eighth, ninth, tenth, and eleventh paragraphs of the plaintiff's petition, and adjudged that the plaintiff have and recover from the defendant on said paragraphs of his petition the sum of $1,240.75, and the costs of the action, and found for the defendant upon all the paragraphs of the plaintiff's petition except the said paragraphs. Both parties filed a motion for a new trial, which motions were overruled by the court and exception reserved, and the plaintiff brings the case here on appeal.

Opinion of the court by

HAINER, J.: The only question involved in this appeal and presented for our consideration is the validity of the county road and bridge warrants.

It appears from the record that all the warrants sued upon in this action were issued under the provisions of the Statutes of 1890, and all the warrants show on their face that they were issued for road and bridge purposes, and that they were drawn on the general road and bridge fund of said county of Washita with the exception of the warrants described in paragraph eleven of the plaintiff's petition, which was issued on the general fund for supplies, books, blanks, etc.

The record further discloses that the warrants sued upon in paragraphs 6, 10, 13, and 14 of the plaintiff's petition, were issued in part payment on a contract entered into between the board of county commissioners and Clanton and Turner for the construction of three bridges in said county, after the same was authorized by a majority vote of the people of the county, as provided in section 1818 of the Statutes of 1890.

After a careful examination of the Statutes of 1890, we are clearly of the opinion that the board of county commissioners had no authority to incur an indebtedness, and issue warrants as an evidence thereof for road and bridge purposes, unless they were first duly authorized to do so by a majority vote of the people of the county. The general power and authority to incur an indebtedness without the vote of the people for road and bridge purposes under the laws of 1890, was conferred exclusively upon the road districts of the various townships of the county, and the county commissioners had no power or authority to levy or collect taxes for such purposes unless such authority was expressly granted them by a majority vote of the people of the county. (*Stiles et al. v. City of Guthrie,* 3 Okla. 26.)

Therefore all warrants or other obligations issued by the board of county commissioners for road and bridge purposes under the Statutes of 1890, unless authorized by a majority vote of the people of the county were *ultra vires* and void. It must therefore follow that the warrants sued upon in paragraphs 2, 3, 4, 5, 7, 8, 9 and 12 having been issued by the board of county commissioners without being first authorized to do so by a majority vote of the people, are void, and the court erred in rendering judgment thereon.

It is contended by the defendant in error that the warrants issued to Clanton and Turner for the building of the three bridges in said county are void, for the reason that the board of county commissioners had no authority to anticipate the fund which should be derived from the tax levy for the construction of said bridges; that in case of extraordinary expenditures of this character, the county commissioners, had no power to make a contract and issue warrants in settlement thereof until the fund authorized by the vote of a special tax had been levied and collected, and that the warrants issued in anticipation of such fund are void.

We think that this is an erroneous interpretation of the letter and spirit of the statute. Section 1818, of the Statutes of 1890, provides that the board of county commissioners shall submit to the people of the county, at any regular or special election, any question involving any extraordinary outlay of money by the county, or any expenditures greater in amount than can be provided for by the annual tax, or whether the county will construct any court house, jail or other public buildings, or aid or construct any road or bridge, and may aid any enterprise

designed for the county, whenever a majority of the people thereof shall authorize the same as hereinafter provided.

Section 1819, provides: "When county warrants are at a depreciated value, the said commissioners may, in like manner, submit the question whether a tax of a higher rate than that provided for shall be levied; and in all cases when an additional tax is laid in pursuance of a vote of the people of the county, or for constructing or ordering.to be constructed any road or bridge, or for aiding in any enterprise contemplated by a preceding section, such special tax shall be paid in money and in no other manner."

Section 1820 provides for the mode of submitting questions to the voters of the county.

Section 1821 is as follows: "When the question submitted involves the borrowing or expenditure of money the proposition of the question must be accompanied by a proposition to levy a tax for the payment thereof in addition to the usual taxes provided for by law; and no vote adopting the question proposed shall be valid unless it likewise adopts the amount of tax to be levied to meet the liability incurred."

Section 1822 provides: "The rate of tax levied in pursuance of the last four sections shall in no case exceed five mills on the dollar of the county valuation in one year. When the object is to borrow money to aid in the erection of public buildings, the rates shall be such as to pay the debt in ten years; when the object is to construct or aid in constructing any road or bridge, the annual rate shall not exceed two mills on the dollar of the valuation;

and any special tax or taxes levied in pursuance of this chapter becoming delinquent shall draw the same rate of interest as ordinary taxes levied in pursuance of the revenue laws of this Territory."

Upon an examination of the record it appears that a proposition was duly submitted to the voters of said county, providing for the construction of three bridges, and for a special annual tax levy of two mills on the dollar on the valuation of the property of said county for such purposes, and that a majority of votes were cast in favor of the proposition so submitted.

We are clearly of the opinion that from these various provisions of our statute it was intended that contracts might be made in anticipation of such funds, and the revenue derived therefrom used to discharge the indebtedness thus incurred.

And this intent clearly appears from section 1824 of the Statutes of 1890, which reads as follows: "Money raised by the county commissioners in pursuance of the last five sections is specially appropriated and constitutes a fund distinct from all others, in the hands of the county treasurer, until the obligations assumed are discharged."

This question was before the supreme court of the United States in the case of *Lynde v. Winnebago County*, 16 Wall. 6, in construing a similar provision of the Iowa statute. It appears that under the provisions of the Iowa statute, the county judge had the power to submit to the people, at a regular or special election, "the question whether money may be borrowed to aid in the erection of public buildings," and that, "when the question so submitted involves the borrowing or expenditure

of money," it "must be accompanied by a provision to lay a tax for the payment thereof," and that "no vote adopting the question proposed will be of effect unless it adopt the tax also."

Mr. Justice Swayne, in delivering the opinion of the court upon this subject, said:

"Upon looking into the record in this case, we find that the question submitted to the voters was, 'whether the county judge, at the time of levying the taxes for the year 1860, should levy a special tax of seven mills on a dollar of valuation, for the purpose of constructing a court house in said county, and said tax to be levied from year to year until a sufficient amount is raised for that purpose, not, however, to exceed ten years.' There was the requisite majority in favor of the proposition. It was expressed in this formula that a court house was to be built, and we think it was implied that money was to be borrowed to accomplish that object. Otherwise the vote gave no authority which did not already exist, and was an idle ceremony. The statute authorized an appeal to the voters only that they might give or refuse authority to incur a debt. It could not have been intended that the erection should be delayed until a sum sufficient to pay for the structure had been realized from the tax authorized to be imposed, or that the work should proceed only *pari passu* with the progress of its collection from year to year. What is implied is as effectual as what is expressed. (*U. S. v. Babbit*, 1 Black 55, 66 U. S. XVII, 94.) Viewing the subject in the light of the statutory provisions and of the action of the people we cannot say that the bonds were issued without due authorization."

But, it is next contended by the defendant in error, that even if the county commissioners had the authority to issue the warrants for the erection of the bridges, and to levy a special tax therefor, that the plaintiff must look

to this special fund for the payment of the warrants; and if the board of county commissioners fail to make an annual levy for such purposes, the remedy of the holders thereof is by *mandamus*, and that they have no right of action against the county upon the warrants.

We think that this contention is well taken by the defendant in error. The statute expressly provided that the money raised by the county commissioners for such purposes shall constitute a fund distinct from all others in the hands of the county treasurer until the obligations assumed are discharged. Where county warrants or orders are drawn payable on a specific fund they create no general liability against the county upon which an action may be maintained by the holder thereof. A county in such cases is only liable for the proper administration of the fund, and when that is exhausted, its liability to the holder ceases.

In *Diggs v. Lobsitz*, 4 Okla. 232, it was held that "one who deals with a municipal corporation, deals with it with reference to the laws regulating the manner in which such corporation shall pay its obligations, and when such person takes a warrant on the city treasury he is bound to know the law authorizing such city to bond said warrant, and that payment of his warrant may be postponed thereby."

The warrants issued to Clanton and Turner for the erection of the bridges were drawn and made payable on a specific fund which was submitted to a vote of the people of the county as required by the statute, and the holders of the warrants must look to that fund for the payment of such indebtedness. If the board of county commissioners refuse to make an annual levy for such

purposes, they can be compelled to do so by *mandamus*. If the county commissioners divert the fund arising from such levy and fail to apply the proceeds thereof to the payment of such warrants, an injunction will lie to restrain them from diverting the funds for any other purpose. Neither does the contention that the annual tax levy of two mills would be sufficient only to pay the interest on the warrants affect the question.

It is a well settled principle of law that every purchaser of a municipal warrant or obligation is chargeable with notice of the statute under which such indebtedness was incurred, and warrant or obligation issued. Where a municipality has been authorized by the legislature to create a debt of a specific character, to borrow money to pay for it, and also authorized to provide for the payment of the principal and interest of the money so borrowed, by the assessment and collection of such taxes as may be necessary, it has been held that *mandamus* is the proper remedy of the holder of municipal bonds to enforce the levying and collection of taxes to pay such bonds or the interest thereon. (*Commonwealth v. City of Pittsburg*, 34 Pa. St. 496; *Commonwealth v. Comrs.* 37 Pa. St. 277; *State v. Clinton Co.* 6 Ohio, St. 280; *Supervisors v. United States*, 4 Wall. 435; *Riggs v. Johnson Co.* 6 Wall. 166; *Board etc. v. Aspenwall*, 24 How. 376; *Mayor v. Ward*, 9 Wall. 409; *Washington Co. v. United States*, 9 Wall. 415; *Brown v. Gates*, 15 W. Va. 131; *Comr's. Court of Limestone Co. v. Rather*, 48 Ala. 433; *Elliott Co. v. Kitchen*, 14 Bush. 289.)

We therefore hold: (1) That under the statutes of 1890, the board of county commissioners had no authority to create any indebtedness for road and bridge purposes

unless they were first duly authorized to do so by a majority vote of the people of the county. (2) That the holders of the road and bridge warrants issued in pursuance of a vote of the people as required by the statutes of 1890, must look to the special fund created for that purpose for the payment of said warrants. And (3) that the remedy of the holder of such warrants where the board of county commissioners have failed or refused to make an annual tax levy therefor, is by *mandamus*, and not by an action upon the warrants.

For the reasons herein stated, the judgment of the district court is reversed, and the cause remanded, with directions to render judgment upon paragraph 11 of the plaintiff's petition, and to dismiss the case as to the other causes of action.

Burford, C. J., having been of counsel in the court below, not sitting; all of the other Justices concurring.