RUFUS S. CRAFT v. COM'RS JACKSON Co., *et al.*

*Error from Jackson County.*

1. ACTION: INTEREST IN THE SUBJECT MATTER.—An action having for its object ther . straining of the county board from allowing a claim alleged to be illegal, and the clerk from drawing a warrant therefor, cannot be maintained by a person[b] having no other interest than one common to al the resident tax-payers of the county.

2. ID: PARTIES.—Such an action cannot be maintained by a private person, unless the act complained of produces some peculiar damage to his individual interests, or which affects his rights in a different manner from the other members of the community.[*]

The facts of the case are stated in the opinion of the court.

*Otis & Glick and J. H. Keller*, for plaintiff in error.

*B. W. Dodge*, for defendant in error.

*Keller, for plaintiff*, contended :

The statute provides that a tax payer may enjoin the illegal levy of any tax [*see* § 253, *Gen. Stat.*, 677] and as it further provides that money illegally allowed by any board of county commissioners may be recovered back at the suit of any person, under section 39, [*p.* 262,] and as the said Lane is shown to be irresponsible, it is but a reasonable presumption that there must be some remedy than a suit against the party to whom the warrants or orders are issued. If there is a remedy it seems to us that it is by injunction, by any relator or tax payer of the county.

It was the purpose of the law, above referred to, to throw a safe-guard around the tax payer, to protect him

---

[*]PARTIES :—It seems, the state or a public officer is the proper party to bring actions to redres public grievances.

from fraud which might be otherwise perpetrated upon him, if he were left entirely at the mercy of the county commissioners as in this case. If the county commissioners have the power to allow $352.50 to a person not entitled to it, and that without remedy, then they have the power to allow one hundred times that amount and the tax payers of the county must submit, because there is no recourse given them by law.

*McArthur v. Kelley,* 5 *Ohio,* 139, 152; 17 *id.* 340; 12 *Ohio St.,* 635, 642. The principle held in these cases is: where commissioners, acting under color of law, proceed to make, illegally and without authority, a permanent appropriation of any money for any purpose, they may be restrained by injunction. In this case we contend that irreparable injury would be done to the people of the county if said warrants are issued and paid, and where an injury is about to be done that is irreparable and any attempt to repair it would be futile, the court has power to restrain by injunction. [*See Putnam v. Valentine,* 5 *Ohio* 187.]

*By the Court,* KINGMAN, C. J.

The plaintiff in error obtained an injunction restraining the defendants from issuing two county warrants to one Lane, on the alleged ground of illegality in the claims of Lane. The judge of the district court discharged the injunction, which decision the plaintiff in error brings to this court for review.

The only question raised by the briefs, and the only one we shall consider, is whether the plaintiff in error has shown such an interest in the subject matter of the suit as will entitle him to claim the interposition of the equitable powers of the court in this manner. He founds

his right of action upon the fact that he is a resident and tax payer of Jackson county. He does not pretend that he has any interest that he does not hold in common with every other resident tax payer of the county. This interest is not peculiar to himself, nor is the injury threatened an injury which in any wise affects him more than every other tax payer, whether a resident or not.

It is true that every citizen has a deep interest in the good order and moral character of the community of which he is a member, and it is equally true that the allowance of a claim manifestly illegal and unjust, with a knowledge of that fact, has a tendency in some degree, perhaps appreciable, to affect injuriously the character of the whole community, and to that extent a damage is done to every resident. Every improper act, however done, and wherever permitted, is in its very nature calculated to exercise some unfavorable influence upon society; but it is not all such injuries that the law affords redress for. It is beyond its scope, and would require more than human abilities to measure, and a greater than human power to redress all evils arising from unjust or immoral deeds. In a much more limited sphere the law only interferes when such wrongs directly and immediately affect the person, character or property of the individual. The unfavorable influence which the allowance of an unjust claim must necessarily have in the community of which the plaintiff is a member, is an injury for which there is no redress in the courts; society must correct this evil by the influence of an enlightened public opinion, brought to bear upon its offending members; so that it is only as a tax payer that the plaintiff has an interest which the law will deal with.

Is this such an interest as authorizes him to maintain this action? The amount of taxes which he pays is not

*[margin note: ACTION: INTEREST of Plaintiff in the Subject Matter.]*

stated, nor is it material. A pecuniary interest, however small, as much entitles him to have his grievances heard and adjudicated, as though he contributed half of the revenues of the county. The only point is whether the law affords him redress in the manner sought in this proceeding.

It is well known that the general rule is, that for wrongs against the public, whether actually committed or only apprehended, the remedy, whether civil or criminal, is by a prosecution instituted by the state in its political character, or by some officer authorized by law to act in its behalf, or by some of those local agencies created by the state for the management of such of the local affairs of the community as may be entrusted to them by law. The individual citizen does not in his own name interfere in behalf of the interests of society, but society acts through and by its properly constituted agencies. The law, as a general principle, has not deemed it proper that offenses or grievances of a public character should be investigated at the suit of a private individual, nor that the officers, to whom important trusts have been confided, should be held liable for their act to any one. When those acts affect every one alike such officers are as amenable as private citizens for any abuse of their authority. If the injury is one that peculiarly affects a person, he has his right of action; if it affects the whole community alike, their remedy is by proceedings by the state through its appointed agencies.

*State, or an Officer, the proper party to redress Public Wrongs.*

In a case like the present, the law has entrusted the examination and allowance of claims against the public to a tribunal created by law and responsible to the people. They are allowed a large discretion in acting for the interest of the county.

*Com'rs of Counties: Allowance of Claims.*

From their judgment there is an appeal in certain cases. It is conceded that there can be no appeal in a case like the one before us, because the instrumentalities, by which an appeal is taken, are wanting. The logic of this statement is, that the law contemplates the action of the board in such particular cases as final. There is an evident necessity for a summary disposition of claims against a county. If one claim may be arrested by the action of a tax-payer, then all may; and the claims against the county tried on injunction instead of by the simple and summary methods provided by law. It is probable that some claims are allowed that would not bear a strict legal investigation. It is possible there are many such. The law seems to rely on the interests of the members of the board to protect the interests of the county. If this is not sufficient, the remedy may be found in the next election; or if the case is flagrant, a prosecution by the proper public officer may prove effective. To allow such citizen, on his own motion, in a case where his own interests are the same as that of every other person, to interfere with and litigate the acts of public officers, and compel them to a contest in the judicial tribunals of the county over each official act, would open the door to endless litigation, and a litigation over and about uncertain and contingent rights; for though the plaintiff is a tax payer now, he may not be when the tax to pay these claims is levied. His interests may never be affected, nor does the petition show that they necessarily ever will be.

Id: AUTHORITIES. The principles involved in this case have been often passed upon. In 14 Connecticut, 578, the learned judge delivering the opinion of the court says: "To preserve and enforce the rights of persons as individuals, and not as members of the community at large,

is the very object of all suits, both at law and in equity. The remedies which the law provides in cases where the rights of the public are affected, and especially in cases of public nuisances, are ample and appropriate, and to them recourse should be had where such rights are violated."

While the action in which this principle is asserted was one to prevent a public nuisance, brought by a person having a right in common with all other owners of property, still the principle is correctly stated, and is in its reason and authority as applicable to this case as to an apprehended public nuisance. The principle was reaffirmed in 17 Connecticut, 374, and in many subsequent cases in that state, especially in 31 Connecticut, 165. The exact principle involved in the case before us was decided in the cases of Doolittle v. Supervisors of Broome County, [18 *N. Y.*, 157,] and of Roosevelt v Draper, [23 *N. Y.*, 319.] These cases were decided by a unanimous court, and an elaborate opinion delivered in each by DENIO, J., and hold "that an act of administration likely to produce taxation is not a matter of private or individual concern. It is an affair altogether public, and the only remedial process against an abuse of administrative power tending to taxation which one can have, is furnished by the elective franchise, or a proceeding in behalf of the state, or in the case of an act without jurisdiction, in treating the attempt to enforce the illegal tax as an act of trespass." Smith v. City of Boston [7 *Cushing*, 254] is to the same effect, though the action in that case was to recover damages for the discontinuance of a street in the city of Boston. The court held he could not recover, inasmuch as the injury experienced by the petitioner was one in common with all the rest of the members of the community. "He may feel it more,"

says SHAW, C. J., "in consequence of the proximity of his lots and buildings; still, it is a damage of like kind, and not in its nature peculiar or specific." The case of Hale, *et al.*, v. Cushman and others [6 *Metcalf*, 430] is very similar to the case before us. In that case the court refused relief, whether on statutory grounds or on general principles one cannot say, unless familiar with the statutes of that state.

To the same purport is the remark of the chancellor of New Jersey, in 3 Stockton, 500; and for the reason of the rule see 4 Blackstone, 167. The reference to Blackstone is to show the reason of the rule, although the rule itself refers to public nuisances. In Putnam v. Valentine [5 *Ohio*, 189] the court refused to sustain an injunction obtained by a supervisor of highways to restrain the commission of great and irreparable injuries to a highway, saying: "Suits to prevent the infraction of rights purely public are generally commenced and conducted in the name of the state, or the officer intrusted with the conduct of the public suits," although it is not certain from the opinion that the case was decided upon this principle, but more likely on the want of power in the supervisor to conduct suits of that character in his official capacity.

A contrary doctrine seems to be maintained in Iowa. See Collins v. Ripley, county judge, [8 *Iowa*, 131,] and Rice v. Smith, county judge, [9 *Iowa*, 576;] but in neither of these cases are authorities referred to, and the reasons given are very unsatisfactory. An injunction is likened to a mandamus, without observing that in the latter class of cases the proceedings are in the name of the state, and by the relator in certain cases, by express authority of law, a fair illustration of what we have endeavored to make appear in this opinion, that the private citizen as such cannot sue in his own name for

public injuries where his rights and interests are the same as those of every other member of the community. Upon reason and authority we are constrained to affirm the decision of the judge of the district court.

All the justices concurring.