JOSEPH STILES, *Treasurer*, *et al.* v. THE CITY OF GUTHRIE, *et al.*

1. SATUTES—*Construction of.*  The intention of the legislature governs the construction of a statute, and if that requires a change in the punctuation, or even in the wording, of the statute, such change must be made.

2. ROAD AND BRIDGE TAX—*County Commissioners No General Authority to Levy.*  The board of county commissioners, under the laws of 1893, had no authority to levy any tax for road and bridge purposes, unless they were first authorized to do so by a majority vote of the people, upon the question being submitted at a general or special election.

3. MISJOINDER OF PARTIES—*Not Ground for Demurrer.*  A misjoinder of parties, both plaintiff and defendant, is no ground for a demurrer to the petition under our code.

4. INJUNCTION AGAINST ILLEGAL TAX—*Joinder of Parties.*  Several persons, whose property is affected in the same manner by the same illegal tax, may, under our statute, join in an action to restrain the collection of such tax.

5. ILLEGAL TAX—*Injunction a Proper Remedy.*  Under our code injunction is a proper and legal remedy to restrain the collection of illegal taxes.

6. GENERAL DEMURRER—*Not Proper If Any Cause of Action Is Stated.*  Where a demurrer is joined in by several persons, on the ground that the petition does not state a cause of action, there is no error in overruling the demurrer as to all of the defendants, if a cause of action is stated against any of them, although no cause of action whatever may be stated against a part of them.

7. WHEN PARTIES IN INTEREST MUST SUE.  One or more tax payers, whose property is attempted to be subjected to an illegal tax, can not maintain an action enjoining the collection of the tax as against the property of other tax payers similarly situated, under the provisions of the code, which is that "when the question is one of common or general interest in many persons, or when the parties are very numerous and it may be impracticable to bring them all before the court, one or more may sue or defend for the benefit of all."

*Error from the District Court of Logan County.*

A. H. *Huston* and *Buckner & Son* for plaintiff in error.

*Bayard T. Hainer* for defendants in error.

The opinion of the court was delivered by

BIERER, J.: The city of Guthrie, a city of the first class, and G. H. Lynds and J. W. Snyder, residents and tax payers of said city, brought this action in the court below against Joseph Stiles, treasurer of Logan county, Richard Smith, J. J. Sampson and S. P. Atherton, county commissioners of Logan county, to enjoin the collection of five mills of tax, which had been levied by the board of county commissioners as a road and bridge tax for the year 1893. A demurrer to the petition of the plaintiffs below was presented by defendants, overruled and excepted to, and judgment rendered in favor of plaintiffs and against defendants, enjoining the collection of these taxes. Two days afterwards, upon application of plaintiffs, the court permitted an amendment to be made to the petition, showing that this levy of tax was made against all of the property of all the citizens and tax payers of Logan county, inside, as well as outside, of the city of Guthrie, where Lynds and Snyder resided, and asked that the defendants be enjoined from the collection of any of these taxes against any and all of the tax payers of the county. Upon this amended petition the court rendered judgment enjoining the entire collection of this tax against any and all tax payers of the county. Exceptions were duly saved to all of the rulings of the court, and an appeal is brought here for a review of this judgment.

There are several important questions of practice and procedure urged for our consideration by plaintiffs in error, and which would ordinarily be considered

before the principal question of substantive law involved in the controversy, but as a disposition of these former questions, as involved in this case, will depend somewhat upon what conclusion we arrive at on the question as to whether the plaintiffs below, or any of them, had any cause of complaint in any form of procedure against the defendants, or any of them, we will consider first the principal question involved in the controversy, and that is, as to whether or not, under the Statutes of this territory of 1893, the county commissioners had any authority to make a general levy of a road and bridge tax throughout the county, without first being authorized so to do by a vote of the qualified voters of the county. The petition alleges that the commissioners had no authority to levy a tax, and the case is briefed by counsel on both sides without any contention but what the petition is sufficient in this respect to show that the commissioners had no authority to levy the tax unless they had it without the question being submitted to the taxpayers, and under general authority given under the revenue law. Counsel for the commissioners base their contention that they had the authority to levy this tax entirely under the provisions of § 5625 of the Statutes of 1893, which section is § 1 of an article entitled "Rate of Taxation and Levy," and contains the marginal note, "Limitation of Taxes." This section reads as follows:

"The rate of the general territorial tax shall not be less than one-half mill nor more than three mills on the dollar valuation, and one-half mill each year for the erection and support of a territorial normal school, and one-half mill each year for the erection and support of a territorial university, the rate for ordinary county revenue, including the support of the poor, not more than six mills on the dollar; a road and bridge tax not to exceed five mills on the dollar, to be paid in money for the county sinking fund, such rate as in the estimation of the county board will pay one year's interest on all the outstanding debt of the

county. with ten per cent. on the principal, and such other taxes as may be authorized by law."

The clause from this section referring to the road and bridge tax and to the levy for a sinking fund is evidently improperly punctuated, and, being punctuated as the legislature evidently intended it to be, would read thus: "a road and bridge tax not to exceed five mills on the dollar; to be paid in money for the county sinking fund. such rate as in the estimation of the county board will pay one year's interest on all of the outstanding debt of the county, with ten per cent. on the principal, and such other taxes as may be authorized by law." It will be observed that this reading of the statute changes no word, but only substitutes a semi-colon for the comma after the word "dollar." and makes the clause "to be paid in money for the county sinking fund" relate entirely to the provision for the payment of the outstanding debt of the county with the interest thereon, and not so that it may be applied, according to the fancy or interest of the reader, to a road and bridge tax or a county debt fund. This reading is. to a disinterested person, manifestly what was intended by the legislature, for the legislature certainly never intended that taxes should be levied for road and bridge purposes, and that the payment of such levy should be made in money for the county sinking fund. Such reading would be absurd on its face, and we cannot let an absurdity supercede the intention of the legislature in construing the law. We must construe the law as the egislature intended it, and if that requires a change in the punctuation, or even in the wording of the statute. such change must be made. (*Territory v. Clark*, 35 Pac. Rep. 882.)

Having ascertained, now, what the language and connection of the different matters referred to in this section are, does it give any authority to the county

commissioners to levy a road and bridge tax? We observe nothing of that kind in the section. There is nothing in the section which directs any particular body, tribunal or officer to make a levy of the tax, nor is there anything in or about the section that purports to do such a thing. It only fixes the rate, or rather, it only fixes the limitation upon certain taxes which may be levied for certain purposes in this territory, and does not say, or pretend to say, what officer or body shall make the levy. It leaves the question as to who, or what officer or tribunal, shall make the levy to other provisions of the statute. The very next section following this one provides that the territorial board of equalization shall fix the rate of taxation for a territorial tax, and that the auditor shall certify the same to the county clerks of the counties. The section following this latter one provides the time when the county commissioners shall meet and levy the taxes in the counties. Upon a consideration of these three sections, it would be as fair to hold that the county commissioners were the body to fix the amount which should be levied for territorial taxes as that they should make a levy of taxes for road and bridge purposes, and this conclusion can certainly not be reached. But there are other sections of the statute which make it very clear as to whose duty it is to levy taxes for road and bridge purposes in cities, and when, if ever, the county commissioners can levy any such taxes. Section 5729, of the same statutes, provides: "The county commissioners of each county, by and with the consent of the respective township trustees, may at the time prescribed by law for levying county taxes, levy a road tax of not more than five mills on the dollar on all taxable property in their respective townships, except the real estate in incorporated city (meaning cities) of over two thousand inhabitants, and the said tax may be paid in labor

under the direction of the overseer of the district in which the property is situated, by any able-bodied man at the rate of one dollar per day, and the same amount shall be allowed for horse-team and wagon, or team and plow." This section pertains only to the levying of a road tax in the townships, and there the county commissioners can levy such a tax only with the consent of the township trustees. It expressly excepts the real estate in incorporated cities of over two thousand inhabitants, but it does not evince any intention because the exception is not made to apply also to personal property, to give the county commissioners power to levy a tax for road purposes even upon personal property in incorporated cities, for the section pertains simply to townships, and the levying of this tax with the consent of the township trustees, and cities have no township trustees who could consent to the levy of any kind of tax whetever. This is the only section we have been able to find, or have been referred to in the briefs of counsel, under the provisions of the law relating to revenue and to roads and highways, which gives the county commissioners any general authority, acting with other officers, to levy any tax for road purposes, and the part relating to this question discloses no provision whatever regulating the levy of taxes in cities of the first class, of which the city of Guthrie is, in the petition, alleged to be one. The law governing cities of the first class, however, makes it very clear as to who has the authority to levy such taxes. One of the subdivisions of § 561, under the laws relating to "Cities of the First Class," and which defines a part of the authority of cities, is as follows: "The cities coming under the provisions of this act, in their corporate capacities, are authorized and empowered to enact ordinances for the following purposes, in addition to the other powers granted by law: * * * First, For opening,

widening and bringing to grade all streets, avenues and alleys, and for building bridges, culverts and sewers, and for foot-walks across streets, avenues and alleys, the assessment shall be made on all the taxable property within the limits of the city, not exceeding five mills on the dollar for these purposes in any one year." Section 566 gives the city council power to appropriate money and to provide for the payment of the debts and expenses of the city. Section 568 is very specific as to who has the authority to levy taxes in a city; not only who has authority, but who is required to do so. It provides: "The city council is authorized, and required, to levy annually, taxes on all taxable property within the city, in addition to other taxes, and in sufficient amount for the purpose of paying the interest and coupons, as they become due, on all bonds of the city, now issued, or hereafter to be issued by the city, which taxes shall be payable only in cash." Section 569 provides that "At no time shall the levy of all city taxes, of the current year for general purposes, exclusive of school taxes, exceed four per cent. of the taxable property of the city, as shown by the assessment book of the preceeding year." Section 573 provides: "All taxes and assessments shall be certified to the county clerk of the proper county, to be placed on the tax roll for collection, subject to the same penalties, and collected in like manner as other taxes are by law collected."

From these sections it is very apparent that in cities, city, as well as road and bridge taxes, must be levied by the city, and must be certified to the county clerk to be there placed on the tax roll for collection. Section 5625 not only does not conflict with these provisions of the law relating to cities of the first class, but is generally upon an entirely different subject matter; it is upon the question of the rate of taxation, and not upon the question as to who shall make the

levy, and in so far as it contains anything which is kindred to the provisions of the law under the chapter relating to cities, it is identical with that law because it fixes the rate of limitation on road and bridge taxes at exactly the same amount which is fixed under the chapter relating to cities. It seems to us that the matter is so clear that there never ought to have been any contention on the part of the county commissioners that they had any authority to levy any tax for road and bridge purposes upon property in cities of the first class unless they had been given specific authority to do so by vote of the people of the county, under § 1788 of the laws of 1893, which is as follows: "They (referring to county commissioners) shall submit to the people of the county, at any regular or special election, any question involving any extraordinary outlay of money by the county or any expenditures greater in amount than can be provided for by the annual tax, or whether the county will construct any court house, jail or other public buildings, or aid, or construct any road or bridge, and may aid any enterprise designed for the county, whenever a majority of the people thereof shall authorize the same, as hereinafter provided." It is under this section, and this section alone, that the board of county commissioners could, under any circumstances, levy any tax for road and bridge purposes within a city, and by the plain terms of its provision, they could make such levy only when authorized to do so by a majority of the people at an election when this question was submitted for public determination. Having been given no such authority, the levy was clearly illegal.

The defendants demurred to the petition of the plaintiffs, and urge that it should have been sustained upon several grounds. The demurrer is a general one, two of the grounds of which were that there was a

misjoinder of parties, both plaintiff and defendant. That there was a misjoinder of parties, both plaintiff and defendant, we have no doubt. The city of Guthrie had no interest whatever in the subject matter of this action. There is no allegation that it had any property which was subjected to this illegal tax, or against which it is claimed that the illegal tax was a lien and was attempted to be enforced; nor do we know of any law in this territory under which this tax could be a lien against the property of a public corporation, such as a city, devoted to public use. It is true, it is one of the duties of a city to look after the financial interests and general concerns of the city, but this means corporate interests of the city as a political entity, and not as a protectorate of the private interests or property concerns of its inhabitants. The city of Guthrie has no more interest in the question as to whether or not a property owner shall pay an illegal county tax, than some other city in the territory, or any of the states, would have. The property owner may, in fact, be a resident and citizen of one of these other cities, and the city is under no moral or legal obligation to look after his private interests. So, too, the board of county commissioners were neither necessary nor proper parties to this proceeding. They had done all the damage they could do in the premises of this illegal tax. They had levied it, had had it placed upon the tax rolls, and these tax rolls were in the possession and under the control of the county treasurer, and it was he, and he alone, who had anything to do with their collection. There was, however, no error committed in overruling the demurrer upon the ground of this misjoinder, for our statute does not make misjoinder of parties, either plaintiff or defendant, a ground of demurrer, and although it may plainly appear, on the face of the petition, that there is a misjoinder of parties in one or both of these respects, it is

not a defect in a petition for which a demurrer lies. (*Winfield Town Company v. Maris,* 11 Kan. 128; *McKee v. Eaton,* 26 Kan. 226; *White v. Scott,* 26 Kan. 476; *Hurd v. Simpson,* 47 Kan. 372.) There is no misjoinder from the fact that both Lynds and Snyder joined in the same petition to restrain the collection of this illegal tax, and the contention of counsel for plaintiff in error, in this respect, is entirely untenable. Under the express provisions of § 4143, of our statutes, any number of persons whose property is affected by the same illegal tax, can join in an action to restrain its collection. This is a plain provision of the statute, and would not need any authority in its support. However, the supreme court of Kansas has, several times, decided the question upon this section, squarely against the contention of the plaintiff in error. (*Parker v. Winsor,* 5 Kan. 362; *Bridge Company v. Commissioners of Wyandotte Co.* 10 Kan. 326; *Gilmore v. Norton,* 10 Kan. 491.)

Plaintiffs in error also demurred on the ground that the plaintiffs had an adequate remedy at law. Under our Statute such a charge, as directed to this action, is really a misnomer. It raises no question whatever. The plaintiffs had an adequate remedy at law, and that adequate remedy was being pursued by them in this proceeding. The remedy pursued was a legal remedy, because it was given by law. The same section just referred to, § 4143, expressly gives to a litigant the right to proceed by injunction to enjoin the levy of an illegal tax. It says: "An injunction may be ›granted to enjoin the illegal levy of any tax, charge or assessment, or the collection of any illegal tax, charge or assessment or any proceeding to enforce the same." And proceedings by injunction to restrain the collection of illegal taxes have, under this section, so often been resorted to as to place its appropriateness beyond all question. (*Parker v. Win-*

*sor*, 5 Kan. 362; *Gilmore v. Norton*, 10 Kan. 491; *Hudson v. Commissioners*, 12 Kan. 140; *Center Township v. Hunt*, 16 Kan. 430.)

The defendants also demurred to the petition on the ground that it did not state facts sufficient to constitute a cause of action. The demurrer was a general one joined in by all of the defendants, and as such a demurrer there was no error committed in overruling it. A demurrer to a petition, which is joined in by all of the defendants, cannot be sustained if a cause of action is stated against any of the defendants, although none whatever may be stated against a part of them. If the demurrer is general and the petition states any cause of action, the demurrer must be overruled. We have already held that a demurrer filed to a pleading as an entirety, the pleading containing several paragraphs, must be overruled if there is one good paragraph in the pleading. (*Hurst v. Sawyer*, 2 Okla. 470.) For authorities upon the propriety of overruling a general demurrer where any cause of action or defense is stated, see *Munn v. Taulman*, 1 Kan. 254; *Pfister v. Wade*, (Cal.) 10 Pac. 369; *Flint v. Dulany*, (Kan.) 15 Pac. 208; *Moyle v. Landers*, (Cal.) 21 Pac. 1133; *O'Callaghan v. Bode*, (Cal.) 24 Pac. 269; *Chevret v. Mechanics' Mill & Lumber Co.*, 31 Pac. 24. This last case is in point, not only in principal, but in the character of the question raised. There, under a provision of the code of Washington permitting such joinder, similar in this respect to our provision which permits several tax payers to join in an action to restrain the collection of the same illegal tax, several parties joined to foreclose laborers' liens, and although the petition was defective as to the causes of action of a part of the parties, it was held that the demurrer, being general only, did not reach the defect. The facts are sufficient in this petition to give a good cause of action on the part of Lynds and Snyder, and the demurrer was properly overruled.

There was, however, one material error committed by the court below in this case, and that was in rendering judgment upon the plaintiffs' amended petition enjoining the defendants from the collection of any of this illegal tax from any of the tax payers throughout the county. The collection of the tax was properly enjoined so far as it related to the property of Lynds and Snyder, but these parties had no authority or power whatever to ask for an injunction against the collection of this tax from any other tax payer or any other tax payer's property. They were simply private individuals, and as such they had the right to complain of the wrong which was being committed against their interests and against their property rights, but they had no right to a judgment preventing this wrong from being inflicted upon the property of others. The other tax payers could pay the tax, or prevent the collection of the same, as they chose. Lynds and Snyder could not prevent either the other tax payers paying the tax or the county treasurer from collecting it. The authorities are very clear upon this proposition. We cite a number of them in support of it, and the brief of counsel contains no cases which are against it. In the case of *Bridge Co. v. Wyandotte Co.*, 10 Kan. 326 the supreme court of that state said:

"It is true, under the statute, that any number of persons whose property is affected by a supposed illegal tax may unite in an action to restrain its collection; but the court adjudicates upon the rights of those only who do so unite, or who appear as parties before it. And the court cannot restrain the collection of any tax upon any property belonging to any person who is not a party to the suit, or who does not ask that the collection thereof shall be restrained. In this action the Wyandotte and Kansas City Bridge company is the sole plaintiff, and it has no right to ask for an injunction to restrain the levying of any tax except a tax against itself, and upon its own

property. It has no right to assume to be the champion of all of the other tax payers of the county, and ask that no tax shall be levied against them. The other tax payers may be willing to pay any tax that may be levied against them to build a free bridge, whether they are bound by law to do so or not."

In the case of *Center Township v. Hunt*, 16 Kan. 430, Mr. Justice Valentine, who also wrote the decision just quoted from, speaking again for the court, said: "One tax payer cannot enjoin a tax levied against another tax payer. Each tax payer must sue for himself, either in an action brought by himself alone, or in an action brought by himself and others with like interests." * * * (*Hudson v. Atchison*, 12 Kan. 140, 146 *et seq.*) Again in this case the learned judge said: "Nor can private individuals sue merely for the protection of the rights of the public." (*Craft v. Jackson Co.* 5 Kan. 518; *Bobbett v. State*, 10 Kan. 9; *Turner v. Jefferson Co.* 10 Kan. 16; *Bridge Company v. Wyandotte Co.* 10 Kan. 326; *Miller v. Palermo*, 12 Kan. 14.) "Public rights and private rights, public actions and private actions, are kept separate; and no action can be brought except by the party having a special interest in the result." (*Crowell v. Ward, ante*, p. 60.) "That is, the public must sue to protect public interests, and private individuals must sue to protect their own interests. And each must sue in his or its own name."

Notwithstanding the uniform holdings of the supreme court of Kansas in an unwavering line of decisions squarely against the claim of counsel for plaintiffs in error that Lynds and Snyder have the right to sue for themselves and on behalf of all the other tax payers of the county to enjoin the collection of this illegal tax, they still claim the right to maintain the action in this form and to this extent under §3910 of our statutes. His hope of winning a favorable decision upon this proposition, in the face of the long line of Kansas decisions, must lie in the fact that the legal history of

similar injunction cases, in which the supreme court of Kansas has held directly against his position, seems not to disclose the fact that this statutory provision, which is identical with § 38 of the Kansas procedure act, has ever been considered by the supreme court of that state in reviewing the question as it arose in cases identical with this. It appears to us, however, that only a mistaken comfort could be drawn from the fact that in the ample and numerous considerations of the question by the supreme court of that state, the learned counsel contending for this position in the various cases determined there, in their desperate effort to get the supreme court to change its former rulings, could never feel bold enough to claim that this section could aid them. When considering this question, however, as applied to the right of a private citizen to maintain an action where his own separate and distinctively private interests are not involved, the supreme court of Kansas has uniformly held, under our code, that a private person cannot, by virtue of being a citizen and a tax payer, maintain an action against public officers where the act complained of affects only the interests of the public in general. and not those of a private person in particular. (*Nixon v. School District*, 32 Kan. 510; *Craft v. Commissioners of Jackson Co.*, 5 Kan. 518; *Bobbett v. The State ex rel. Dresher*, 10 id. 9; *Turner v. Commissioners of Jefferson Co.*, 10 id. 16; *Bridge Company v. Commissioners of Wyandotte Co.*, 10 id. 326, 331; *The State ex rel. v. Commissioners of Jefferson Co.*, 11 id. 66; *Miller v. Town of Palermo*, 12 id. 14; *A. T. & S. F. R. Co. v. The State*, 22 id. 1–13.) And we do not now perceive how the fact that the wrong compained of involved such an injury as would entitle a private party to enjoin the public officers, would permit him, because he did have that particular interest which would enable him to sue the public officers, to extend his right of action beyond

the scope of that which he must possess in order to be enabled to sue at all.   A party may have an action to redress his own wrongs, but unless the right be specifically given by statute to him so to do, he may not call a public officer, or even a private citizen, into a judicial contest to redress the wrongs of other persons. The statute in question does not change the rule to the extent claimed for it by counsel for defendants in error.   It is not an abstract, common or general interests of many persons, which the question must involve in order to entitle a party to sue on behalf of himself and other persons.   In the language of Mr. Justice Valentine, when considering the cases in which parties may join in an injunction proceeding even under the liberal terms of our §4143, "The joint or common interest of the plaintiffs necessary to enable them to sue jointly must be in the subject matter of the action and not merely in the legal questions involved in their separate causes of action." (*Hudson v. Commissioners, supra.*)   There the question was as to whether the parties could join at all or not, and it was held that, although the statute gave a number of persons whose property was affected by an illegal tax the right to join in the same action, a joint or common interest must exist in the subject matter of the action, and not simply in the legal questions involved.   So, too, in this case, the question of common or general interest in many persons, which will entitle one or more persons to sue on behalf of all when the parties are very numerous, must be in the subject matter of the action, and not in the question as an abstract legal proposition, as is the case when applied to property in which the person bringing the action has no personal interest, but is concerned from a philanthropic impulse, or as the case may be a precedent for his individual litigation.   A man who has property sought to be subjected to the payment of an illegal tax is, from a legal

standpoint, no more interested in the question as to whether or not property wholly belonging to other persons shall be subjected to the burden of the same illegal tax, than if he had no property affected by such tax at all, and surely if he has no property affected by the tax he cannot involve his neighbor, or public officers, in litigation for the mere mental satisfaction of settling a legal question, however common or general it might be. This section of the statute makes provision whereby, in a case where a large number of persons are involved in a controversy over property in which all have some, an equal, or a general interest, one person, or a few of the persons, may litigate the question, and thus disencumber the proceedings from the useless burden of many parties, and enable all of those interested in the action to obtain the same relief as if they had joined in the proceeding.

The part of the judgment which enjoined the collection of this tax from the property of Lynds and Snyder was proper; the part which ordered a general injunction in behalf of all other tax payers was erroneous. The judgment of the court below is modified accordingly, and the costs divided.

Dale, C. J., not sitting, having presided below; all the other justices concurring.