THOMPSON *et al.* v. HASKELL, *Governor.*

No. 694.    Opinion Filed June 1, 1909.

(102 Pac. 700.)

COUNTIES—Alteration—Elections—Contests.  An election having been
held under the provisions of section 4, art. 17, Const. (Bunn's
Ed. sec. 326), and sections 1 to 10, inclusive. art. 1, c. 26, pp.
275-279, Sess. Laws 1907-08, for the purpose of detaching certain
territory from Kiowa county and annexing the same to Tillman
county, neither (a) can a resident taxpayer of said proposed de-
tached territory, nor (b) a resident taxpayer of said county, not
within said proposed detached territory, nor (c) both, maintain
an action for the purpose of contesting such election and re-
straining the Governor from issuing a proclamation as to the
result thereof.

Dunn, J., dissenting.

(Syllabus by the Court.)

*Error from District Court, Logan County; A. H. Huston, Judge.*

Action by G. D. Thompson and others against C. N. Haskell,
Governor.    Judgment for defendant, and plaintiffs bring error.
Affirmed.

On the 4th day of January, 1909, the plaintiffs in error, G.
D. Thompson and L. P. Lorance, as plaintiffs, began this action
by petition in the district court of Logan county, alleging that
the said G. D. Thompson was then at the times thereinafter stated
a citizen, resident, and tax payer of Hunter township, Kiowa
county, Okla., and that the said L. P. Lorance was then and at
the times thereinafter stated a citizen, resident, and taxpayer of
Kiowa county, Okla., and instituted said suit in behalf of them-
selves and all other citizens, residents, and taxpayers of said
Hunter township, Kiowa county, similarly situated that on the
18th day of November, 1908, the defendant, as Governor, issued
his proclamation to the voters of said township, calling a special
election in order that the voters of said township might vote on
the question as to whether or not all of ranges 16, 17, 18, and that

portion of range 19 lying east of the North Fork of Red river,
and all being west of the Indian Meridian, in township 1 north,
embracing all of what is known as Hunter township in Kiowa
county, should be annexed to and become a part of Tillman
county; that said election was attempted to be held in said town-
ship on the 29th day of December, 1908, but that said pretended
election was void, and that no legal election was held on said day,
and the result of the votes cast at said pretended election is void
for the following reasons: That said election was required to be
held under the election laws of the state of Oklahoma, and that
public notice thereof should be given by publication for three suc-
cessive weeks before the day of such election in the Manitou Field
Glass, a newspaper of general circulation in the town of Manitou,
Tillman county, and by posting a copy of said proclamation at
some public place in each voting precinct in said township; that
said proclamation was not posted as therein required in the voting
precincts in said township, and that no notice of said election was
given as required by law, and therefore said election was void;
that at said pretended election improper influences were issued by
the county of Tillman in order to induce the citizens and voters
of said township to vote for said annexation; that said Hunter
township is situated in a remote part of Kiowa county, and that
no bridges have been built over the streams in said township,
although such bridges are very necessary for the public travel
and convenience of the inhabitants of said township; and that
parties interested in causing said territory to be annexed to Till-
man county prior to said election, and for the purpose of im-
properly and corruptly influencing the voters of said Hunter
township, caused to be generally posted and circulated in said
township circulars stating that Tillman county had in its treasury
the sum of $7,000 which could be used for the building of bridges,
and promising and pledging said Tillman county to build bridges
in said Hunter township and especially a bridge over Deep Red
creek where a bridge was very much needed by many of the voters
in said township; that said circular was intended to convey to the

voters of said township the promise that the $7,000 in the treas-ury of Tillman county available for the building of bridges, and no part of which had been raised by any taxation in Hunter town-ship, should be donated to said township for the purpose of build-ing bridges; that by corrupt and unlawful promises many persons were induced to vote for the annexation of said territory to Till-man county who would not have so voted but for said corrupt and improper circular and promises; that sufficient voters were thus induced to vote for the annexation of said territory to Tillman county to change the result, and but for said corrupt and im-proper circular and promise the said proposition would not have been carried; that said proclamation provided that notice of said election should be given by publication for three successive weeks before the day of election in the Manitou Field Glass; that said Manitou Field Glass is a paper of very small circulation in Kiowa county, and that the terms of said proclamation were not com-plied with, in that the first publication was on the 26th day of November, 1908, the second on the 3d day of December, 1908, the third on the 10th day of December, 1908, and the fourth and last on the 17th day of December, 1908, which does not comply with the requirements of said proclamation, because said notice should have been published for the three weeks next preceding said election; that the Manitou Field Glass is a newspaper pub-lished in Tillman county, and is not published in Kiowa county; that said election was not held as provided by the election laws of the state of Oklahoma, in that opposing factions were not allowed counters at said election, but said counters were all appointed from one faction, to wit, the faction favoring the annexation of said territory to Tillman county, with the exception of one precinct in which a counter of the opposing faction was allowed; that said election was not conducted fairly and according to law, but many fraudulent and illegal votes were allowed to be cast, mutilated ballots were counted in favor of the annexation of said territory to Tillman county, which ought not to have been counted, and that, on a recount and re-examination of said votes, a sufficient

number of illegal votes will be discovered and sufficient, mutilated ballots which were counted and which should not have been counted to change the result, but that, owing to the limited time allowed the plaintiffs, they cannot at this time set forth said alleged frauds more particularly; that two of said election officers in the absence of the secretary canvassed the official count of said vote on the night of the election in the county · clerk's office in the town of Hobart, in Kiowa county, which officers were violent partisans for the annexation of said territory to Tillman county; that the canvass of said votes was made in the absence of the secretary, whilst said officers knew that said secretary was then on the way to Hobart to assist in said count; that said hasty action in counting said votes in the absence of said secretary was done for the purpose of preventing the plaintiffs and others who desired to contest said election from contesting the same and protesting against said vote and inquiring into the legality of said election and of the votes cast thereat, and from obtaining information in regard to the many illegalities and frauds perpetrated at said election; that the election officers who conducted said election were not unbiased, but were bitter partisans in favor of annexing said territory to Tillman county; that one J. B. Swarts was the inspector at Manitou precinct, and that said Swarts is the person who signed and circulated the handbill corruptly agreeing to divert the bridge fund of Tillman county to build bridges in the territory comprising Hunter township sought to be transferred to Tillman county, in the event it was annexed to said Tillman county, and that, by reason of the circulating said hand bills and the corrupt efforts· therein made, the said Swarts was disqualified from acting as inspector of said election, and that the vote cast at said box, which was largely in favor of annexing said township to Tillman county, should be thrown out, and not counted in ascertaining said vote; that at the voting precinct at Sturgis in said county and township, which voted heavily for transferring said territory to Tillman county, and whose vote if thrown out would change the result of said election, the election officers were bitter partisans

in favor of transferring said township to Tillman county, and that said election officers, in disregard of their duty, left the voting places, and canvassed the voters and argued with them to vote to transfer said territory to Tillman county, and were in other respects unfair and prejudiced, and did all in their power to induce parties to vote for transferring said territory to Tillman county and discouraged and sought to induce voters who did not wish such transfer to change their votes; that said election was not fair, and was not the free, unbiased, and unbribed will of the voters of said township, but that the majority of 13 which was obtained, and many votes in addition thereto, were obtained for said transfer by reason of the improper and unlawful acts of the election officers and by reason of the inducements held out by said circular before referred to, and by the unfair and fraudulent count of the votes made by the election officers in the absence of the secretary, and before the plaintiffs and other persons who desired could ascertain the facts and protest against said election and the counting of said illegal and fraudulent votes; that the defendant, as Governor of the state of Oklahoma, is about to issue his proclamation, based on the return made to him as above set out, by which he will proclaim that the voters of said Hunter township have voted to transfer said township to Tillman county, and that he is also about to issue his proclamation calling an election in Tillman county to ascertain whether or not the voters of said county will accept said territory, and that he will do so unless restrained by order of the court, and by so doing irreparable damage and harm will be done to said plaintiffs and to all other persons in said Hunter Township; that the tax levy in Kiowa county, in which Hunter township is now located, for county purposes is two mills on the dollar valuation of property, while the tax levy in Tillman county, to which it is sought to attach said township, for the same purpose is eight mills on the dollar valuation; that plaintiffs are without adequate remedy at law, and, unless granted relief in a court of equity, will be remediless in the premises. Then follows a prayer that said election

be declared void; that the defendant be restrained and enjoined from issuing a proclamation declaring the result of said election, etc.

Thereafter the defendant, as Governor, entered his appearance and waived the question of jurisdiction, and submitted himself to the jurisdiction of said court in such cause. On the 2d day of January, 1909, in the absence of the regular district judge from said district, application was made to the Honorable J. C. Strang, judge of the county court of said county, who issued the injunction restraining the issuance of the proclamation, as prayed for. On February 25, 1909, the defendant demurred to the petition on the grounds (1) that it did not state a cause of action in favor of the plaintiffs, or either of them, and against the defendant; and (2) that it appears upon the face of the petition that the plaintiffs have no capacity to maintain the action. On the 6th day of February, 1909, motion was made to dissolve the injunction before the district judge, and on the 8th day of February, 1909, the court rendered its decision sustaining the defendant's demurrer to said petition, and dissolved and set aside the order granting an injunction. The plaintiffs refused to amend, and elected to stand on their petition, and judgment was accordingly rendered in favor of the defendant.

*H. E. Asp, E. M. Stewart, J. H. Cline,* and *Devereux & Hildreth,* for plaintiffs in error, citing *Kellogg v. School District,* 13 Okla. 285, and *Crampton v. Zabriska,* 101 U. S. 106.

*Dale, Bierer & Hegler,* for defendant in error, citing: *Stiles v. City of Guthrie,* 3 Okla. 26; *Bobbitt v. State ex rel.,* 10 Kan. 9; *School Dist. No. 1 v. Shadduck,* 25 Kan. 467.

WILLIAMS, J. (after stating the facts as above). Section 4, art. 17, Const. Okla. (Bunn's Ed. § 326), provides:

"The Legislature shall provide by general laws for the creation of new counties or altering or changing lines and the equitable division of assets and of liabilities, and the original location of county seats in such new counties. * * * Nor shall any territory be taken from an existing county for any purpose bring-

.ing the newly created line of such existing county nearer than ten miles to the county seat thereof. Nor shall the taxable area, population, or taxable wealth of said existing county be reduced below that required for a new county. Nor shall any territory, in any case, be transferred from one county to an existing county, if, by such transfer of territory, the county from which the territory be taken will then be smaller in area than the county to which the addition is made. Provided, that when territory is to be transferred from an existing county to either a new or an existing county there must be sixty per centum of the vote cast in such particular territory in favor of the transfer, and, in case the transfer be to an existing county, the acceptance of such territory must first be approved by a majority of the electors of said county, at an election to be called and held therefor, as may be provided by law."

The first Legislature of the state passed a law carrying into effect said provisions of the Constitution. Sess. Laws 1907-08, pp. 275-279, c. 26, §§ 1-10, art. 1. Section 2 of said act provides that, before any election shall be called as therein provided, there shall be a petition signed by 25 per centum of the qualified electors residing in the territory sought to be created into a new county or transferred to another county, such per centum to be determined by the total vote cast in said territory for the head of the state ticket at the next preceding general election, said petition to be verified by affidavit showing that the petitioners are qualified electors of said territory and are 25 per centum thereof, and such petition shall be filed with the Governor, accompanied by the affidavits of three freeholders, qualified electors of said territory, stating that the change sought to be made will not bring the newly created lines of such existing county nearer than ten miles of the county seat, and that the taxable wealth of said existing county will not be reduced below that required for a new county. Section 3 provides that, when said petition accompanied by the required affidavits shall be filed with the Governor, he shall within 20 days thereafter issue his proclamation calling an election to be held in the territory sought to be detached not less than 30 nor more than 60 days from the date

of his proclamation, such election to be held under the provisions of the election laws of the state, and upon such notice as the Governor in his proclamation may direct, and the Governor shall cause to be placed upon the ballots to be voted at such election the metes and bounds of the territory sought to be transferred, and said ballots shall also contain the words. "Shall said territory become a part of ———— [filling in the name of the county to which said territory is sought to be transferred] county?" followed by the words, "Yes," "No." Section 4 further provides that, upon the holding of such election, the board of convassers shall certify and return said vote to the Governor, as required by law, and he shall within 10 days thereafter declare the result of such election, and, if 60 per centum of the voters at such election vote "Yes," the Governor shall within 10 days after declaring the result of the election issue his proclamation calling an election to be held in the county to which said territory is sought to be transferred, which election shall be not less than 30 days nor more than 60 days thereafter. Section 7 provides for a division of the assets and liabilities, etc. No provision appears to have been made to contest such election. There is some question, however, as to whether or not such election may be contested in chancery, and its powers invoked to restrain the declaring of the result thereof by the Governor. See the following authorities: *Dickey v. Reed et al.,* 78 Ill. 263; *Moulton v. Reid,* 54 Ala. 323; *Gibson v. Board of Supervisors,* 80 Cal. 359, 22 Pac. 225; *State v. Eggleston,* 34 Kan. 714, 10 Pac. 3; *U. S. Standard Voting Machine Co. v. Hobson,* 132 Iowa, 38, 109 N. W. 458, 7 L. R. A. (N. S.) 512, 119 Am. St. Rep. 539, 10 Am. & Eng. Ann. Cas. 975; *State v. Carlson,* 72 Neb. 837; 101 N. W. 1004; *Hamilton v. Carroll,* 82 Md. 326, 33 Atl. 648; *Fletcher v. Tuttle,* 151 Ill. 41, 37 N. E. 683, 25 L. R. A. 143, 42 Am. St. Rep. 220; *Harris v. Schryock,* 82 Ill. 119; *Ogburn et al. v. Elmore,* 121 Ga. 73, 48 S. E. 702.

The machinery and the procedure for the election for detaching territory from one county and annexing it to another is clear-

ly marked out by the provisions of the Constitution and the enactments of the Legislature. The enforcement and execution of these provisions are committed to the election officers and the governor of the state, all of whom are members of the executive department. With the municipal government of the county, which is the agency of the state in that political subdivision (*Frantz et al. v. Autry,* 18 Okla. 616, 91 Pac. 211), not complaining here, when an individual citizen seeks to intervene and invoke the jurisdiction of chancery to do that which the agency of sovereignty has failed or refused to do, he must show that he has a clear and undisputed right to do so. Clearly a party residing in Kiowa county, but not within the proposed detached territory, when there is no contention that such detachment will reduce Kiowa county below the minimum as to population, taxable wealth and area, has no such interest as would enable him to maintain such an action; but has a resident and taxpayer of that portion of Kiowa county proposed to be detached? Is it to be said that to reside within any portion of the state of Oklahoma, relative to the subdivision thereof into counties, works an irreparable injury to a citizen, and operates as an injury in the nature of a private wrong? But it is insisted that the county tax rate of Kiowa county is only two mills, and that it is eight mills in Tillman county. It is to be assumed and presumed, however, that taxes are only levied for benefits, and thereby are not burdens; that the citizens derive reciprocal benefit therefor *quid pro quo.* 1 Cooley on Taxation (3d Ed.) p. 27. And there is no special allegation to overcome such assumption and presumption. In the case of *Kellogg v. School District No. 10 Comanche County,* 13 Okla. 285, 74 Pac. 110, It is held that injunction at the suit of a taxpayer is the proper remedy to restrain a school district from contracting for or constructing schoolhouses at unauthorized places, and irregularly and wrongfully contracting liabilities which the district would be liable for and the taxpayers required to pay, being in accord with the rule laid down in *Crampton v. Zabriskie,* 101 U. S. 601, 25 L. Ed. 1070, wherein the right of tax-

payers to invoke the interposition of a court of equity to prevent an illegal disposition of the moneys of a county or illegal creation of a debt which they, in common with other property holders of the county, may otherwise be compelled to pay, is recognized and declared to be the rule of the state courts in numerous cases. But in this case the relief sought is to prevent the detachment of a subdivision of Kiowa county and the annexation of the same to Tillman county. In the petition of complainants it is alleged for the purpose of showing a right to maintain this action that the county tax rate in Kiowa county is two mills, and that in Tillman county it is eight mills; but that does not bring the complainants within the rule of *Kellogg v. School District No.* 10, *supra.* There the question was the creation of an unauthorized debt, for which the complainant, as a taxpayer, would be liable.

The case at bar is a question relative to the creation of or addition to, or subtraction from political subdivisions; it being insisted that the county tax rate in the former county is less than that of the county to which the annexation is to be made. But it appears from the record that there are no bridges or public improvements in that area sought to be detached, and it is expected, if it is annexed to the other county, that there will be such public improvements made. Taxes, as a rule, are levied in accordance with legal authorization for benefits that have legally accrued or are legally accruing. The detaching of a part of the territory from Kiowa county and the annexation of it to Tillman county is strictly a political act. There are no allegations in the petition of any request made on the county attorney or proper county officers to institute the proper action to test or contest this election, or any refusal so to do. The rule is announced in the case of *Craft v. Jackson County Commissioners,* 5 Kan. 518, that for wrongs against the public, where actually committed or only apprehended, the remedy, whether civil or criminal, is by a prosecution instituted by the state in its political character, or by some officer authorized by law to act in its behalf, or by some of those local agencies created by the state for the management of such

of the local affairs of the community as may be intrusted to them by law; that the individual citizen does not in his own name interfere in behalf of the interests of society, but society acts through and by its properly constituted agencies. The law as a general principle has not deemed it proper that offenses or grievances of a public character should be investigated at the suit of a private individual, nor that the officers to whom important trusts have been confided should be held liable for their acts to any one. When those acts affect every one alike, such officers are as amenable as private citizens for any abuse of their authority. If the injury is one that peculiarly affects a person, he has his right of action. If it affects the whole community alike, their remedy is by proceedings by the state through its appointed agencies.

In the case of *Stiles, Treasurer, v. City of Guthrie,* 3 Okla. 39, 41 Pac. 388, the court said:

"When considering this question, however, as applied to the right of a private citizen to maintain an action where his own separate and distinctively private interests are not involved, the Supreme Court of Kansas has uniformly held under our Code that a private person cannot, by virtue of being a citizen and taxpayer, maintain an action against public officers where the act complained of affects only the interests of the public in general, and not those of a private person in particular. *Nixon v. School District,* 32 Kan. 510, 4 Pac. 1017; *Craft v. Commissioners of Jackson Co.,* 5 Kan. 518; *Bobbelt v. State ex rel. Dresher,* 10 Kan. 9; *Turner v. Commissioners of Jefferson Co.,* 10 Kan. 16; *Bridge Co. v. Commissioners of Wyandotte Co.,* 10 Kan. 326, 331; *State ex rel. v. Commissioners of Jefferson Co.,* 11 Kan. 66; *Miller v. Town of Palermo,* 12 Kan. 14; *A., T. & S. F. Ry. Co. v. State,* 22 Kan. 1-13."

The case of *Kellogg v. School District No. 10, supra,* does not appear to go to the extent of permitting private individuals to restrain public officers to correct purely public wrongs, but to restrict the right of a private individual to that class of cases which involve the creation of debts illegally against, or the wrongful expenditure of moneys of, the taxpayers. The Kansas rule was to the effect that one taxpayer could not enjoin a tax levied

against another taxpayer; that each must sue for himself, either in an action brought by himself alone or in an action brought by himself and others with a like interest. And this appears to be the rule recognized in the case of *Stiles, Treasurer, v. City of Guthrie, supra;* but the case of *Kellogg v. School District No. 10, supra,* seems to have extended this rule so as to permit a taxpayer to maintain an action to prevent the levying of a tax unauthorized, or the disposition of public funds other than as authorized by law.

Under the Kansas rule, as indicated in *Stiles, Treasurer, v. City of Guthrie,* for what purpose could the complainants have maintained this bill? Is there anything unauthorized to be restrained or prevented that would work a hurt or irreparable injury in law to them? If this township is detached from Kiowa county and annexed to the other county, will any tax be imposed upon them other than in strict accord with, and as authorized by law? If not, how will it work any hurt or irreparable injury to them? It may be, as alleged, that the county tax rate in said township in Kiowa county is only two mills, and that, when annexed to Tillman county, it will be eight mills. But, if the levies are not authorized and are unlawfully made, as taxpayers, in the event they become residents of that county, they will have adequate remedies for protection. And it is to be assumed that in Tillman county, with a tax levy of eight mills for county purposes, they will have bridges and public improvements commensurate with the burdens they bear. When a party seeks the intervention of a court of equity to stay the administration and execution of the law by the executive department of state, he must bring himself clearly within the rule, and show an irreparable injury or otherwise a clear right thereto, before equity will lend its strong arm to stay the administration or work of the co-ordinate branch of government. *Noble State Bank v. Haskell et al.* 22 Okla. 48, 97 Pac. 609. It does not appear that the complainants herein have the capacity to maintain this action. As to whether or not, had this action been instituted by the proper law officer of the proper po-

Vol. 24—6

litical subdivision under proper allegations, relief should be afforded in equity, we now refrain from expressing an opinion.

The judgment of the lower court is affirmed.

Kane, C. J., Hayes and Turner, JJ., concur; Dunn, J., dissents.