**Howard NORRELL, Appellant,**

v.

**Paul JUDD et al., Appellees.**

Court of Appeals of Kentucky.

June 28, 1963.

Reeharing Denied Jan. 31, 1964.

William E. Johnson, Darnell & Johnson, Frankfort, for appellant.

Max M. Smith, Allen Prewitt, Ben B. Fowler, Dailey & Fowler, Frankfort, for appellees.

EDWARD G. HILL, Special Commissioner.

This is an action by a taxpayer to void a television cable service agreement made between the Frankfort Municipal Housing Commission (herein called "Housing Commission"), a creature of KRS 80.010 et seq., and Community Services, Incorporated (herein called "Community"), a non-profit corporation furnishing television cable service to residents of Frankfort.

Under the agreement, Community agreed to furnish television cable service to tenants of the housing development at its prevailing rates, waiving, however, its regular installation charge of $50. In return the

Housing Commission agreed to permit Community to use the electric poles located on the project.

In his complaint, the taxpayer alleged that at the time of the consummation of the agreement the defendant, Joe H. Pennington, was an employee and officer of the Housing Commission and a director of Community. He complains that, because of this fact, the contract is repugnant to KRS 80.080.

In his various pleadings, the taxpayer seeks the following relief:

(1) Judgment voiding the contract;

(2) A declaration of rights regarding the validity of the agreement;

(3) An order requiring the Housing Commission to relieve Pennington of his duties with the Housing Commission;

(4) A declaration of rights regarding the right of Pennington to continue to serve as Executive Director and Secretary-Treasurer of the Housing Commission.

The trial court rendered summary judgment, based on affidavits of certain of the parties, dismissing the complaint. From that judgment the taxpayer appeals.

The trial court based its judgment on the belief that Pennington had no pecuniary interest in the formation and continuation of the agreement. To determine the correctness of this judgment, we must look to the language of the statute.

KRS 80.080 reads in pertinent part as follows:

"No member or employee of a housing commission shall acquire any interest, direct or indirect, in any project or in any property including or planned to be included in any project, nor shall he have any interest, direct or indirect, in any contract or proposed contract for materials or services to be furnished or used in connection with any project."

Many considerations of public policy enter into conflict-of-interest statutes, such as the one under consideration. See Perkins, The New Federal Conflict-of-Interest Law, 76 Harvard Law Review 1113, at page 1118.

Obviously, the first and foremost evil sought to be avoided by this statute is self-dealing by an official or employee, that is, the use of a public office or position for the purposes of self-enrichment. This was the principle which was apparently in the mind of the trial court when it based its judgment on the fact that Pennington would derive no pecuniary benefit from the formation or continuation of the agreement, since his fee for serving Community was fixed.

In deciding the correctness of this judgment, we look to the affidavits filed herein by Pennington made in support of his motion for summary judgment.

Pennington admits in his affidavit that he is the acting manager of the Housing Commission, and that his duties are to administer and manage the operation of the housing project, under the policies fixed by the Housing Commission. He further admits that he is an elected director of Community and that he is currently being paid a fixed fee "for the performance of his duties as director."

If the performance of Pennington's duties as director of Community consist, in part, in the procuring of new subscribers for the television corporation, then his interest in performing that duty would be such an "interest" as would bring the case within the prohibitions contained in KRS 80.080. In fact, the procurement of this agreement, if Pennington did in fact procure it, would have been the very thing for which he was being paid by Community.

There is no question of the capacity of the contracting parties to make the agreement in question, absent any direct or indi-

rect .interest on the part of Pennington. We do not feel that the fact that Community is a nonprofit endeavor makes any difference in determining the question of interest on the part of Pennington.

We could point up numerous other avenues of possible financial interest on the part of Pennington, however, we leave their discovery to the ingenuity of counsel.

Taking the affidavits as true, as a matter of law they are insufficient to sustain the judgment.

■ We turn next to the question of the validity of the agreement. Assuming, arguendo, that Pennington does have a direct or indirect interest in the agreement in question, does that interest render the agreement void? We think it does.

The cases of Bradley & Gilbert Company v. Jacques, Ky., 110 S.W. 836, 33 K.L.R. 618, and Nunemacher v. City of Louisville, 98 Ky. 334, 32 S.W. 1091, involved statutes very similar to the one in question. We held in those cases that the purpose of such statutes was to prohibit contracts of this character. We feel that the reasons expressed in those cases for holding the offending contracts to be void are as vital today as they were at the time the decisions were rendered, if not more so.

■ Violation of the statute in question, if any violation did occur, does not automatically disqualify Pennington from continuing his employment with the Housing Commission. The cases cited by appellant to sustain his contention that Pennington is automatically disqualified involve self-executing statutes which declare the office to become automatically vacant upon the happening of a certain prohibited event. No such statute is here involved.

■ We conclude that appellant has standing as a taxpayer to challenge the validity of this agreement. See Kentucky Utilities Company v. Ginsberg, 255 Ky. 148, 72 S.W.2d 738.

Reversed with directions to set the judgment aside and for proceedings consistent with this opinion.

The opinion is approved by the Court and the judgment is reversed.