Howard NORRELL, Suing as a Taxpayer for Himself and Those Similar-ly Situated, Appellants,

v.

Paul JUDD, Chairman Ex Officio, et al., Appellees.

CONSOLIDATED TELEVISION SERVICE, INC., a Kentucky Corp., etc., Appellants,

v.

James W. (Pete) FLYNN et al., Appellees.

Court of Appeals of Kentucky.

Feb. 12, 1965.

See also Ky., 374 S.W.2d 192.

William E. Johnson, Johnson & Burton, Frankfort, for appellants.

Allen Prewitt, Jr., Ben B. Fowler, Dailey & Fowler, Frankfort, for appellees.

PALMORE, Judge.

Two actions against the Frankfort Municipal Housing Commission, a public corporation, and Community Service, Inc., a nonprofit private corporation, have been consolidated on appeal to this court. The first suit was brought by Howard Norrell as a taxpayer of Frankfort and pertains to

the Leestown housing project. The second suit was brought by Consolidated Television Service, Inc., a private corporation of which Norrell is president and chief stockholder, both in its individual right and as a taxpayer of Frankfort, and pertains to the Sutterlin housing project. Both projects, including the utility poles on their premises, are owned by the Commission.

Community Service, Inc., and Consolidated Television Service, Inc., are business competitors offering television cable service in the Frankfort area. For background information see Consolidated Television Service v. Leary, Ky., 382 S.W.2d 78 (1964), in which a contract giving Community an exclusive right to install and maintain its facilities on certain utility poles owned by the Electric and Water Plant Board of Frankfort was upheld.

In 1960 the Commission entered into a contract, terminable by either party on 90 days' notice, giving Community nonexclusive permission to use the electric poles located in the Leestown project. Norrell brought suit to have that agreement set aside as void because Joe Pennington, an officer (executive director) of the Commission was also a member of Community's board of directors, creating a conflict of interests in violation of KRS 80.080. On appeal to this court following a summary judgment of dismissal it was held that whether the contract came within the purview of KRS 80.080 depended on the proof to be adduced and, if so found, it would be void. Norrell v. Judd, Ky., 374 S.W.2d 192 (1964). Further proceedings in the circuit court resulted in a judgment declaring the contract void ab initio and enjoining Community from furnishing any service in the Leestown project as long as the conflict of interests continued.

The post-appeal Leestown judgment was entered on April 24, 1964. Meanwhile, the Commission had cancelled its contract with Community, had adopted uniform regulations under which any television cable service company or companies would be permitted, upon application, to use the poles and make connections to the housing units in the project, and had notified both Consolidated and the tenants in the project accordingly. These regulations, as had the original contract with Community, provided that no tenant should be required to pay an installation charge. They put Community and Consolidated on an equal footing except that Community's equipment was already in place and its customer relationships established, as the result of the void contract.

The execution of this veronica by the Commission in withdrawing the contract and opening its project areas to all cable companies that might desire entry had revealed at once that the remedy sought in the original complaint, as amended, would be an empty victory. So Norrell tendered and was permitted to assert, prior to the judgment, a further amendment in which he alleged that Pennington was still serving both masters, Community was still being permitted to serve the Leestown project, and it would be inequitable for Community to retain the advantage of the facilities it had installed unlawfully. Hence the prayer of the complaint was enlarged to include a declaration that Community be disentitled "to any benefits to be derived from any previous void contract or permit."

Following the judgment of April 24, 1964, Pennington severed his connection with Community, and in response to a motion for a rule the circuit court on May 20, 1964, directed Community to notify all its subscribers in the Leestown project that its service would cease as of midnight on May 31, 1964, and that they would be free to choose between Community and Consolidated or to discontinue using any cable service whatever, as they saw fit. Community complied with this order.

Norrell appeals from the judgment and supplementary order of May 20, 1964, because they do not go far enough, in that they do not require Community to remove its facilities from the project and thus

put the two companies in an equal competitive position.

In the Sutterlin case the Commission in 1962 gave Community an exclusive contract after receiving proposals from both companies in which Consolidated offered to serve customers in the project for 25¢ per month less than the rate proposed by Community. That contract was attacked on the same ground as the Leestown contract and on the further ground of arbitrary action by the Commission in accepting a proposal less favorable to the tenants than that offered by Consolidated. In due course a judgment was entered on July 2, 1964, containing the same provisions as the Leestown judgment of April 24, 1964. Meanwhile the Commission had taken the same course of action with regard to the Sutterlin contract and the Sutterlin project as it had taken in the Leestown case, and Consolidated had amended its complaint to demand in substance that Community be required to remove its facilities from the Sutterlin project.

The complaint in the Sutterlin case demanded not only the invalidation of Community's contract but also the award of an exclusive contract to Consolidated. As the latter point is not pursued on this appeal it appears to have been abandoned in the wake of the Commission's ultimate decision not to award an exclusive contract to anyone. Thus the questions to be decided in the two cases are the same.

We can and do understand the dissatisfaction of Mr. Norrell and his company at the manner in which their efforts to compete with Community have been frustrated. On the surface at least it would appear that they have received something less than fair treatment. But the courts cannot be the compleat St. George. There are some dragons beyond our rightful province to slay.

This court has been most liberal in its recognition of the right to maintain a taxpayer's suit. Thus a business competitor[1] has been permitted to maintain such an action to enjoin the exercise of an unlawful permit or franchise. City of Ashland v. Fannin, 271 Ky. 270, 111 S.W.2d 420 (1958); People's Transit Co. v. Louisville Ry. Co., 220 Ky. 728, 295 S.W. 1055 (1927); Merchants' Police & District Telegraph Co. v. Citizens' Telephone Co., 123 Ky. 90, 93 S.W. 642, 29 K.L.R. 512 (1906). And though it has been held in some jurisdictions that the right is restricted to cases involving the illegal creation of debts or the wrongful expenditure of funds,[2] it is settled here that the taxpayer need not show that the public will be damaged if the relief is denied. Kentucky Utilities Co. v. Ginsberg, 255 Ky. 148, 72 S.W.2d 738, 741 (1934). Nevertheless, from the very nature of a taxpayer's suit there must be some reasonable relationship between the particular relief sought and the public interest. There is bound to be a limit to what can be done for an individual proceeding under the guise of an affronted taxpayer.

The prosecution of these lawsuits had a legitimate public objective separate and apart from the private aspirations of the instigators. Otherwise they could not have been maintained in the name of the taxpayers. But as we view it they have reached a parting of the ways. The public purpose was achieved when the relief originally asked was given; the contracts were stricken down, the municipal officers received an official precept which ought to and no doubt will from henceforth assure a proper course in this area of their activities, and the public right to nullify the unlawful acts of its agencies was vindicated. Only the personal interests of the individual plaintiffs have come up short of full requital.

---

1. See Kelly, Piet & Co. v. Baltimore, 53 Md. 134, 142 (1880), holding that relief will be denied "when the controversy, reduced to its elementary facts, is one between rival tradesmen" for the city's custom.

2. Cf. Thompson v. Haskell, 24 Okl. 70, 102 P. 700, 702 (1909).

We are asked to push back the hands of the clock so that Community will have to start even with Consolidated. We are asked to make Community root out wires and connections that it will have an instant right to restore. At this point the mask has been dropped and the suits assume a mien not only more private than public, but private altogether. The taxpayers could have no interest in or benefit from requiring Community to remove facilities it will have an immediate right to replace. Indeed, to all but the private competitors who were permitted entrance to the courts because they wore the taxpayers' cloak such a prospect must appear fatuous.

The judgments are affirmed.