CENTER TOWNSHIP V. ALEXANDER HUNT, *as Treasurer, &c.*

1. PETITION, *as a Pleading, and as an Affidavit.* Where a petition is used merely as a petition, it may sometimes be held sufficient, although its statements of the facts are so general and comprehensive as to be styled conclusions of fact, or conclusions of law; but where it is also used as an affidavit, and as evidence, it must then state the facts with all that fullness of detail required in affidavits or depositions.

2. PARTIES; TOWNSHIPS; *Public Rights, and Private Rights.* A township cannot maintain an action to enjoin the collection of an illegal tax levied on the taxable property belonging to the private individuals of such township. Such an action can be maintained only by the individuals themselves.

*Error from Wilson District Court.*

THIS action was commenced in the district court January 2d 1875. The petition, after the caption and title, was as follows:

"Center township, in the county of Wilson, and state of Kansas, plaintiff, states that it is a municipal corporation, duly organized under the laws of the state of Kansas, and complains of the Memphis & Northwestern Railroad Company, a corporation duly organized under the laws of the state of Kansas, Alexander Hunt, treasurer of Wilson county, John Francis, treasurer of the state of Kansas, and O. V. Small, defendants, for that, whereas, heretofore, to-wit, on the 20th of March 1873, at the county of Wilson aforesaid fifty-six citizens, the same being electors and tax-payers of Center township in said county of Wilson, presented to the trustee, clerk and treasurer of said township a petition asking and praying that a special election be ordered in said township for the purpose of voting on a proposition to donate the sum of $50,000 to the Memphis & Northwestern Railroad Company to aid said Railroad Company in the construction of a proposed line of railroad from the Leavenworth, Lawrence & Galveston railroad at or near Thayer to the city of Fredonia, in said Center township, upon certain conditions therein named; whereupon the trustee, clerk and treasurer of said Center township, after considering said petition ordered that an election be held in said Center township at the

usual place of voting therein on the 7th of April 1873, and that due and legal notice of the same be given for the purpose of voting upon the following proposition, viz.:" [*Here is set forth the proposition in full, followed by a statement that the election was held, the votes canvassed, showing 108 votes "for the donation and bonds," and "30 votes against the donation and bonds." After which the petition proceeds:*] "Afterward, to-wit, on the 8th of April 1873, the trustee, clerk and treasurer of the said township of Center, on behalf of said township, in pursuance of the election aforesaid, made and entered into the following contract with the said Memphis & Northwestern Railroad Co., viz.:" [*Here follows the contract, after which is the following:*] "And afterward, to-wit, on the —— day of ———— 1873, the said township of Center by its trustee and clerk executed and issued its said bonds, with coupons attached, in the sum of $50,000 as follows, viz.: fifty bonds, with coupons attached, for the sum of $1,000 each, numbered consecutively from 1 to 50, which said bonds are in words and figures as follows:" [*Copy set forth, showing the bonds to be payable in 30 years, with interest at 7 per cent., payable semi-annually on the 1st day of July and January. And then the petition alleges:*] "And afterward, on the —— day of ———— 1873, the said fifty bonds of $1,000 each, with the coupons attached as aforesaid, were delivered to the treasurer of the state of Kansas to be held by him in escrow, and delivered to the said Memphis & Northwestern Railroad Company on the conditions aforesaid. And plaintiff shows and alleges, that said railroad company, in pursuance of said contract before mentioned, proceeded and did grade said portion of said line of railroad to the said city of Fredonia, together with the stonework and masonry thereof as before mentioned; that afterward, on the 5th of September 1873, the said treasurer of the state of Kansas delivered to said railroad company $28,000 in bonds, part and parcel of said $50,000 in bonds delivered to him by the said Center township as aforesaid, and the remaining $22,000 in bonds, part and parcel of said $50,000 in bonds as aforesaid, are still and now are held by the said treasurer of the state of Kansas, who refuses and fails to cancel and deliver the same to said Center township, although due demand therefor has been made by the said Center township. Plaintiff further says that a full and complete record of all and singular the things heretofore stated and alleged are now,

and at all times have been, in the office of the clerk of said Center township.

"Plaintiff further says, that a large proportion of said bonds have been by the said Memphis & Northwestern Railroad Company sold and delivered to various parties who are unknown to the plaintiff, and that a portion of said bonds are now held by the said Railroad Company, and that a portion of said bonds are now owned and held by the defendant O. V. Small; and that the said Alexander Hunt, treasurer of Wilson county, owns and holds a portion of said bonds issued as aforesaid.

"Plaintiff further says, that the said Memphis & Northwestern Railroad Company, after having done the grading and masonry as aforesaid, have wholly abandoned the building of said railroad, and have wholly failed and neglected and refused, and still doth refuse, fail and neglect to complete said railroad, or any part thereof, according to the contract, as before set out, and have not nor will they construct and equip said railroad or any part thereof, or build and maintain the passenger and freight depots as agreed to in said contract before mentioned; that what work was done by said railroad company, to-wit, the grading and masonry, is poorly constructed, and so negligently and carelessly done as to render it of no value whatever; that the consideration, and the sole consideration for the issue and delivery of said bonds aforesaid was that the said railroad company construct and equip the said line of railroad as aforesaid, and erect and maintain good passenger and freight depots within the corporate limits of the said city of Fredonia, in said Center township, all of which the said railroad company hath wholly failed and refused to do or attempt to do according to the terms of said contract, within the time or within a reasonable time thereafter, and that the work already done, without the completion of said railroad, is of no value whatever to the said plaintiff, or any other person or persons.

"Plaintiff further complaining, says, that on the — day of — 1874, William Edminster, W. H. Morgan and P. S. Booth, the commissioners of said Wilson county, levied a tax of one and forty-five hundredths per cent. upon the taxable property of the said Center township, and caused the same to be placed upon the tax-rolls of said Wilson county, for the purpose of paying interest now due and to come due on the coupons attached upon said bonds issued to the said Memphis

& Northwestern Railroad Company as aforesaid; that said tax so levied as aforesaid and placed upon the tax-rolls as aforesaid, is without authority of law, and is irregular, illegal and void. Plaintiff further says that the assessed value of the taxable property of said Center township, at the time said donation aforesaid was voted and donated, did not exceed the sum of $218,492, and that the highest assessed value of said Center township for any year from its organization to the present time will not exceed $220,000. Plaintiff avers that at the time of the issuing and delivery of said $50,000 in bonds as aforesaid, for the purpose aforesaid, the said township of Center had an outstanding and existing bonded indebtedness in the sum $7,000. Plaintiff further avers that the said $50,000 in bonds issued by said Center township, and for the purpose aforesaid, and interest coupons thereto attached, and each and every part thereof, are illegal; that they were issued without authority of law, and are void, and that the said defendants, and each and every of them, and the owners and holders of each and every bond issued as aforesaid, had due and legal notice of the illegality and irregularity of said bonds before purchasing the same or any part thereof.

"Plaintiff further complaining says that the tax-rolls of Wilson county containing said illegal tax upon the taxable property of Center township, illegally levied as aforesaid, and for the illegal purpose as aforesaid, are placed in the hands of Alexander Hunt, treasurer of Wilson county, who will enforce the payment of the said illegal tax immediately, to the irreparable injury of the plaintiff, unless restrained by this honorable court. Wherefore," etc.; [followed by a prayer for a temporary injunction, restraining the defendants from selling or assigning said bonds, or any of them, and that defendant Hunt, as treasurer, be restrained from collecting said taxes, etc., and on final hearing that said injunction be made perpetual, and that said bonds be surrendered up for cancellation, etc.]

This petition was duly verified. The then district judge, (Hon. JOHN R. GOODIN,) granted a temporary injunction. Defendant *Hunt*, the county treasurer, demurred, "for that it appears from the plaintiff's petition that said plaintiff has no legal capacity to sue." He also moved to vacate the temporary injunction, on the same ground, and because it did

not appear that the plaintiff had or ever had any taxable property or any taxes to pay in said Center township. This motion was heard on the 3d of March 1875, before District Judge TALCOTT, who ordered that "said temporary injunction be so modified as to allow said *Alexander Hunt* to collect the taxes so as aforesaid enjoined." From this ruling and order the plaintiff, said *Center Township,* appeals, and brings the case here on error.

*Kirkpatrick & Burge,* for plaintiff:

1. The sole question presented by the record is, did the district judge err in dissolving the temporary injunction in this case? It is claimed that the petition does not state facts sufficient to constitute a cause of action in favor of the plaintiff and against the defendant. Neither the corporation nor its officers can do any act, make any contract, or incur any liability not authorized by law. All acts beyond the scope of the power granted, are void. Much less can any power be exercised, or any act done, which is forbidden by statute. 1 Dillon Munic. Corp. 173, § 55. And every person dealing with a municipal corporation must at his peril, inquire·into their power to make the contract. And every person dealing with the agents of such corporation, is likewise bound to ascertain the extent of the agent's authority; and every contract made beyond the scope of their authority is void in the beginning — void in whomsoever's hands it may come. 1 Dillon on Munic. Corp. 463, § 372; Cooley's Const. Lim., §§ 196, 212 to 215; 9 Kas. 690; 12 Kas. 186. The plaintiff is not estopped from setting up its own want of power to make the contract in question. 2 Dillon on Munic. Corp., § 749.

The bonds for the payment of which the tax in question was levied are void because they were issued in excess of the statutory limit, and the plaintiff is no more legally bound to contribute to their payment than it is to the public debt of Cuba; and to appropriate the plaintiff's property for such illegal purpose would not be taxation, but plunder. Sec. 1

of ch. 68 of the laws of 1872 contains a proviso which expressly prohibits issuing bonds in excess of a certain limit. This limit is made to depend upon the value of the taxable property of the township. At the time this law was passed a prior law was already in force prescribing the method by which to ascertain the value of the taxable property of the township, and also providing that such value so ascertained should be a matter of record in the office of the recording officer of the board of county commissioners. Gen. Stat. 68, § 43. When the legislature passed this law of 1872 making the value of the taxable property of the township the standard by which to determine the amount of bonds which could lawfully be issued, it had reference to existing law on the same subject, and intended the value, as shown by the last assessment-roll on file in the county clerk's office, at the date of issuing the bonds. The bonds in question were issued 8th April 1873, and their validity must be tested by the assessment of 1872, which was the only evidence known to the law from which the officers of plaintiff corporation could then ascertain the value of the taxable property of the township. The issue of $50,000 is $35,000 in excess of the statutory limitation, as will be seen by reference to the record. Such a disregard of the statutory provisions invalidates the entire issue.

2. It is an undisputed fact that the railroad company failed to comply with the terms of the contract with the plaintiff, and that the consideration for the issue and delivery of said bonds has wholly failed; that said railroad company, and others, hold $28,000 of plaintiff's negotiable bonds, who received the same with full notice that the consideration of the same had wholly failed. Under such circumstances, a court of equity will order said bonds to be delivered up and canceled. 8 Ohio St. 565.

3. The tax in question is void for want of power in the commissioners to levy the same. The power to tax rests upon necessity, and is inherent in every sovereignty; but a mere municipal corporation cannot exercise this power, unless

conferred by legislative grant. (Cooley's Const. Lim., § 479; Blackw. Tax Titles, 3.) Then, most certainly one municipal corporation cannot impose a tax upon another without legislative grant. The board of county commissioners would have no more power to impose a tax upon a township, than it would upon the District of Columbia. It is contended however that § 13 of the laws of 1874, page 48, confers such power. That section only refers to bonds to be issued in pursuance of that act, and not bonds already in existence. Section 7 of the same act, found on page 45, laws of 1874, in express terms makes it the duty of the proper officers of any *township* to levy a tax for the payment of all bonds issued prior to that act.

4. But it is said that the plaintiff has no legal capacity to sue. Such objection is only tenable where the petition discloses some legal incapacity in the plaintiff, such as infancy, lunacy and the like. 11 Kas. 128.

5. The last objection stated in said motion is, that plaintiff's petition does not show or allege that it has any property to be affected by said tax. The plaintiff states that the county commissioners levied a tax on all the taxable property of the plaintiff. If the petition is not definite and certain in this respect, a motion to have the same corrected would have been proper. 10 Kas. 131. Is it necessary that the plaintiff's petition should state such facts? We maintain it is not. The plaintiff stands charged with an unjust and illegal tax. It has, under the statute, a right to relieve itself of that charge, whether it had property or not. Its right to the remedy does not depend upon the extent of its possessions. 8 Kas. 284.

The opinion of the court was delivered by

VALENTINE, J.: This was an action brought by Center township against Alexander Hunt and others for the purpose of having certain bonds delivered up, declared void and canceled, and also for the purpose of obtaining a perpetual injunction forever restraining the collection of a certain tax. The plaintiff also prayed for a temporary injunction for various

purposes, among which was that the defendant Alexander Hunt, treasurer of Wilson county, should be restrained *pendente lite* from collecting a certain tax levied on the taxable property of said township for the purpose of raising a fund with which to pay the interest on said bonds. Said temporary injunction was granted, but afterward it was so modified as not to further restrain said treasurer from collecting said tax. It is this order modifying said temporary injunction of which the plaintiff now complains.

Was said order erroneous? This is the only question in the case. The petition of the plaintiff was verified by affidavit; and the petition thus verified seems to have been the sole foundation upon which the plaintiff rested his temporary injunction. Was it sufficient? Where a petition is used merely as a petition, it may sometimes be held sufficient, although its statements of the facts are so general and comprehensive as to be styled conclusions of fact, or conclusions of law. But where it is also used as an affidavit, and as evidence, as in this case, it must state the facts with all that fullness of detail required in affidavits or depositions. (*Atchison v. Bartholow*, 4 Kas. 124; Gen. Stat. 675, code, § 239.) Every lawyer knows the difference between the statements of the facts in a petition, and the statements of the facts in an affidavit or a deposition. In an affidavit or deposition they are stated in such minute detail as to be proof or evidence of the more general facts as they are usually stated in a petition; and we generally call such detailed statements of the facts, evidence. In a petition, if the facts should be stated obscurely, the court upon motion of the adverse party may require that the petition be made more definite and certain by amendment. But no such practice is allowed with reference to affidavits. Hence, an affidavit must stand or fall upon the facts as it alleges them. If the affidavit is to be used as evidence, as in this case, and it should state the facts in such general and comprehensive terms as to be styled conclusions of fact, or conclusions of law, the affidavit would not be sufficient. Now for the purposes of this case we may admit that the petition

was sufficient as a petition to sustain said temporary injunction; but was it sufficient as an affidavit? Most clearly not. It does not show that the plaintiff would be injured in the slightest particular by the collection of said tax. It does not show that any of said tax was charged against the plaintiff, or that the plaintiff was in the slightest danger of ever being compelled to pay the least portion of the same. It is true, the petition alleges that the tax was levied "upon the taxable property of said Center township;" but from all the allegations of the petition, it is clear beyond all doubt, that the pleader meant that the tax was levied upon all the property taxable *in* said township. The court below so construed the petition; and unless it were clear that the court below erred we would not reverse its ruling. The petition does not allege that any tax was ever levied upon "the taxable property of the *plaintiff*," or that the *plaintiff* ever owned any property. The petition simply alleges, as we have before stated, that the tax was levied "upon the taxable property of the said Center township." Now this allegation would not be sufficient as evidence to prove that the township owned certain property upon which said tax was levied, even if it stood alone, and was not shown to mean otherwise by the other allegations. But other allegations show that this was intended to mean otherwise.

It is claimed by plaintiff that the tax is void because said bonds are void, and that said bonds are void because issued in excess of ten per cent. of "the taxable property of said Center township." (Laws of 1872, p. 110, § 1.) The petition alleges that the assessed value of "the taxable property of said Center township" never exceeded $220,000, and therefore it is claimed that because more than $22,000 of bonds were issued, the whole of such bonds are invalid. Now suppose they are invalid, still the plaintiff has no right to enjoin the tax levied upon the taxable property of the various individuals of the township to pay the interest on them. If any tax should be assessed against the plaintiff, the plaintiff might then perhaps maintain an action to enjoin that tax. But it cannot maintain an action to enjoin a tax

assessed against the other taxpayers of the township. One taxpayer cannot enjoin a tax levied against another taxpayer. Each taxpayer must sue for himself, either in an action brought by himself alone, or in an action brought by himself and others with like interests. (*Bridge Company v. Wyandotte Co.*, 10 Kas. 326, 331, et seq.; *Hudson v. Atchison*, 12 Kas. 140, 146, et seq.) The mere fact that the plaintiff is a public corporation, is not enough to entitle it to sue for the taxpayers in such a case. There is no law making it the guardian of private rights. Besides, if it were as unfortunate in the protection of private rights as it has been in the protection of public rights, it would not be a very safe guardian. It is admitted that it has violated law, reason, and morality by issuing illegal bonds to the amount of $50,000, without any adequate consideration therefor, probably without sufficient capacity to pay them, and certainly with no intention of ever paying them. It has made promise which it never intends to fulfill, and probably could not well fulfill. We think it would be better for it to let the private individuals of the township take care of their own interests. (As to the validity of similar bonds in the hands of a *bona fide* holder, see *Marcy v. Township of Oswego*, Labette Co., Kansas, recently decided by the supreme court of the United States.) But the law of this state is such that the public cannot sue merely for the protection of private rights. (*The State, ex rel., v. McLaughlin*, 15 Kas. 228.) Nor can private individuals sue merely for the protection of the rights of the public. (*Craft v. Jackson Co.*, 5 Kas. 518; *Bobbett v. Dresher*, 10 Kas. 9; *Turner v. Jefferson Co.*, 10 Kas. 16; *Bridge Company v. Wyandotte Co.*, 10 Kas. 326; *Miller v. Palermo*, 12 Kas. 14.) Public rights and private rights, public actions and private actions, are kept separate; and no action can be brought except by the party having a special interest in the result. (*Crowell v. Ward*, ante, p. 60.) That is, the public must sue to protect public interests, and private individuals must sue to protect their own interests. And each must sue in his or its own name. (*Crowell v. Ward*, supra.) The public must sue in

the name of the state, county, city, township, etc., as the case may be; and each individual must sue in his or her own name. An action cannot be brought merely for the benefit of an individual in the name of the public. (*The State v. Jefferson Co.*, 11 Kas. 66; *The State v. McLaughlin*, and *Crowell v. Ward*, supra.) If said tax is illegal, then there can be no question as to the right of the individual taxpayers to sue separately, or jointly, as they may choose, for the purpose of enjoining the tax levied against them respectively. (*Gilmore v. Norton*, 10 Kas. 491; *Gilmore v. Fox*, 10 Kas. 509.)

It is understood that precisely the same questions are involved in the case of Cedar Township v. Alexander Hunt, and the City of Fredonia v. Alexander Hunt, as are involved in this case; and therefore this opinion is intended for each of the three cases, and the same judgment will be rendered in each of said cases.

The order of the judge of the court below modifying said temporary injunction will be affirmed.

All the Justices concurring.