DETERMINED IN

# THE SUPREME COURT

OF THE

# STATE OF WYOMING

[APRIL TERM, 1918.]

## BOARD OF COMMISSIONERS v. FEATHERSTONE.

(No. 881; Decided August 7th, 1918; 174 Pac. 192.)

TAXATION—PRESUMPTIONS—LEGALITY OF TAX LEVY—INJUNCTION—
OFFICIAL ACTION—COMPLAINANT'S INTEREST—COLLECTION OF TAXES
—TAX SALE—OFFICIAL ACTS—ADVERTISEMENT OF TAX SALE—
ACCOUNT—EQUITABLE JURSIDICTION—ADEQUATE REMEDY AT LAW.

1. Where it does not appear from the pleadings or evidence in
an action to restrain the county treasurer from advertis-
ing at the expense of the county, a tax sale of irrigation
district land, that taxes were levied on such land, the levy
will be presumed to have been made as required by statute.

2. Where a county disclaiming liability for the expense of
advertising a tax sale of irrigation district land may dis-
allow a claim therefor and set up a complete defense to an
action brought thereon, an injunction to restrain the
treasurer from advertising such sale is unnecessary.

3. In a suit by a county and a resident thereof to restrain the
county treasurer from advertising a tax sale of irrigation
district land at the county's expense, where it did not
appear that it either owned any of such land, or had any
interest in the collection of such tax, an injunction should
not be granted.

4. In an action to restrain the treasurer from advertising a tax
sale of land upon the ground that such advertisement was
futile and a waste of money, the court cannot assume,
from failure to sell such land at former tax sales, that
there would be no bidder at the proposed sale.

5. An injunction will not be granted to restrain a county
treasurer from advertising tax sale of land upon the
ground that the advertisement would be futile and a waste

of money, although it can be assumed or proved that there would be the same lack of bidders at the proposed sale as at former tax sale of same land, where advertisement was required by statute for enforcement of the tax.

6. An action for accounting will not lie, where the account, if any, is all on one side and consists of four items of money paid; the money being recoverable in law as conveniently as in equity.

ERROR to District Court, Albany County; HON. V. J. TIDBALL, Judge.

Action by The Board of Commissioners of Albany County and another against Bernard Featherstone, as the county treasurer and ex officio tax collector of the county, and another. Judgment for defendants and plaintiffs bring error.

C. P. Arnold and J. R. Sullivan, County Attorney, for plaintiffs in error.

There is no warrant of law that a county is ever involved in the fiscal affairs of an irrigation district; since it is a voluntary association of land owners for the irrigation of their property. (Sec. 829, Comp. Stats. 1910.) Its affairs are managed by its own directors and official bonds run to the district. (Secs. 832-834, Comp. Stats. 1910.) The property is owned by the district. (Secs. 841-842, Comp. Stats. 1910.) Taxes are levied as special. (Section 847, Comp. Stats. 1910.) Officers are paid by the district. (Sec. 854, Comp. Stats. 1910.) Districts may be dissolved as private corporations. (Sec. 868, Comp. Stats. 1910.) The county treasurer is ex-officio treasurer of the district, but he reports to the Board of Directors and not to the County Commissioners. (Sec. 849, Comp. Stats. 1910.) The act imposes certain duties upon the treasurer. (Sec. 849, Comp. Stats 1910.) There is no justification for the use of public funds for irrigation district purposes; the character of irrigation districts of this class has been defined by the Supreme Court of Washington, as an organization for the improvement of property within the district by the owners thereof. (Board v. Peterson, 29 Pac. 995.) And in Idaho as a public quasi

corporation organized to conduct business for the benefit of the owners of lands within its limits holding its property in a proprietary rather than a governmental capacity. (City of Nampa v. District, 1911; 115 Pac. 980.) The creation of irrigation districts, unlike drainage districts, is unsupported by principles of police power, and being in the nature of private enterprises cannot levy a tribute upon the property of other taxpayers in the county. The State Constitution clearly prohibits this. (Art. 1, Sec. 28.) The State may not engage in the work of internal improvements without two-thirds vote of the people. (Art. 16, Sec. 6; Gray's Lim. Tax. Pr. 440, p. 242.) The Constitution prohibits counties from extending financial aid to such associations. The State is precluded from loaning public credit to private corporations, directly or indirectly. (Cooley, Hist. Mich. 279; People v. State, 23 Mich. 499; Thomas v. City of Port Huron, 27 Mich. 320; People v. Common Council, 28 Mich. 227.) Nor can such burdens be sustained on the theory of benefit to the general municipality. (Dillon, Mun. Corps., 5th ed., Sec. 120; Attorney General v. Pingree, 79 N. W. 814.) The judgment of the court below denying plaintiff in error judgment for the money it has paid out and that county funds should be expended in advertising tax sales of irrigation district property should be reversed.

*Corthell, McCollough & Corthell,* for Featherstone, defendant in error.

This brief is filed in support of cross errors assigned by the county treasurer; the exceptions being to the eleventh and twelfth findings of law. The treasurer objects to so much of the eleventh finding as relates to the lien of the county upon district lands sold for taxes; objection is made to the twelfth finding in that it is apparently assumed that the county has a prior lien for costs of advertising and that the lands have been bid in by the county treasurer as a matter of legal construction; there is no provision of law expressly or impliedly declaring such a lien; it is not created by simply taking thought on the subject, nor because it might be deemed a convenient thing in itself. A lien can only be

created with the owner's consent by contract, express or implied, or by operation of law. (25 Cyc. 663; Frost v. Atwood, 41 N. W. 96.) A court of equity cannot create a lien. (Dehn v. Dehn, 136 N. W. 453.) It is usually a creature of statute. (Wyman v. Quayley, 9 Wyo. 326; Thomas v. Mann, 22 Wyo. 99.) And the rule applies to tax liens. (Miller v. Anderson, 47 N. W. 957.) A lien established against real property is not to be extended by implication to personal property. (Jaffray v. Anderson, 24 N. W. 527, 528.) Nor implied from a mere provision in a city charter making general statutes applicable to towns. (Quimby v. Wood, 35 Atl. 149, 151.) It is the doctrine of this court that such implications will not be entertained. (Turner v. Horton, 18 Wyo. 281.) The assumption that a ministerial act will be presumed to have been performed whether it has in fact been performed or not is entirely novel; the doctrine would seem to supplant and supersede the remedy of mandamus. (Sec. 5054, Comp. Stats. 1910; State v. Board, 7 Wyo. 478.) If the official duty of this character can be treated as performed merely by the statutory mandate, why provide remedy by action? (People v. Lewis, 92 N. Y. S. 642. See also Warmolts v. Keegan, 54 Atl. 813; Newton v. Leal, 56 S. W. 209; U. S. v. Schurz, 102 U. S. 378; State v. Staub, 23 Atl. 924.)

*Cassius M. Eby,* for defendant in error, Laramie Valley Municipal Irrigation District.

Since large sums have been expended by the county in advertising district lands for sale in previous years without bidders, it seems idle to continue a procedure entailing such a needless charge without benefit either to the bondholders, owners of delinquent lands, or defendant district. The taxes are special in their nature. (Secs. 847, 848, Comp. Stats.) The local assessment is exceptional both as to time and locality. (2 Cooley on Taxation, Sec. 1154.) No bondholders are made parties to either proceeding, nor have bondholders made an effort to raise money to liquidate unpaid interest or matured bonds; they are not complaining. None of the parties to this action can be benefited unless the

county can be benefited by taking over the lands at tax sale; not every act of a taxing statute is mandatory. Many are merely directory. (Baltimore v. Hortor, 48 Atl. 445; Walker v. Edwards, 197 Pa. St. 645; Matter v. Gibbons, 56 Hun 650; State v. Baldwin, 62 Minn. 518; Oceana County v. Hart, 48 Mich. 319; Alvord v. Collins, 20 Pick. 418.) Inasmuch as bondholders are not complaining, it seems futile to continue a needless expenditure of public money in advertising district lands for sale in the collection of these taxes. By express terms of the law, the district board is precluded from fixing the rate of levy. (Secs. 847-849, C. S.) The duties imposed upon the county board are analagous to that in connection with district school taxes. (Sec. 2404, C. S.) The action was brought to restrain the treasurer from the further publication of delinquent district tax lists, but seems to have been tortured into an effort to recover money expended by the county officials; finally the district sustains a relation to the county similar to that of a school district, or a drainage district, and funds raised for the district are for a public purpose. (1st Cooley on Taxation, 211.) The use of water for the irrigation of land provided for use in the Wright Act is a public use. (Lux v. Haggin, 69 Cal. 303; Stockton v. Stockton, 41 Cal. 166.) The Wright Act above referred to is the California Irrigation District Law subsequently borrowed and enacted in a number of other states, including our own. The use must be regarded as a public use, else no general scheme of irrigation can be formed or carried into effect. (Fallbrook Irrigation District v. Bradley, 164 U. S. 161.) Irrigation districts conserve a public as well as a private interest. (Argyle v. Johnson, 118 Pac. Rep. 493; Lundberg v. Green River Irrigation Dist., 119 Pac. Rep. 1041.) The Irrigation District Act adopts all the machinery of the general tax law for the collection of district taxes. (Sec. 850, Comp. Stats.) The county authorities can impose all necessary expenses of this character upon the irrigation district. (Nevada Bank v. Board of Supervisors, 91 Pac. 124.) The county treasurer controls the procedure prescribed by law for advertising the sale of real estate for

delinquent taxes. (Board v. Chaplin, 5 Wyo. 74.) The fact that they are special taxes does not take them out of the operation of the revenue laws of the state, or make them any the less public. (Tull v. Roysten, 2 Pac. 868; McCord v. McIntyre, 138 Pac. 59.) The county alone is in position to protect itself for any expense and charges incurred by bidding in the land in the absence of other bidders. It is absurd to contend that the district should pay for an expense incurred over which it has no control. A district is a public corporation and can sue and be sued in its corporate capacity. (2 Weil Water Rights, p. 1255, L. ed.) It is a creature of the legislature in the same sense and with political powers as are possessed by cities and towns. (92 Cal. 296; 28 Pac. 272; Pioneer Dist. v. Walker, 119 Pac. 304.) Defendant district excepted to conclusion of law number twelve holding it to be a ministerial duty of the treasurer to bid in lands when no bids were received and by further holding that when no bids are offered at such sale the lands are by operation of law held to have been bid in by the county, whether expressly bid in or not. One of the effects of which doctrine would be to remove a considerable portion of real property from the burden of taxation. As under the law, such lands would be placed in a separate column and not taxed again until sold by the county. The judgment below should be approved and affirmed; the statute relating to assessments for interest due upon irrigation district bonds should be held to be advisory and not mandatory; lands bid in at tax sales by the county treasurer or by operation of law should not be placed in separate lists, as far as the same relate to maintenance taxes, but should be left to bear their just and equal proportion of such taxation.

*Corthell, McCollough & Corthell,* brief of defendant in error, Featherstone, in answer to brief of plaintiff in error.

It seems unnecessary to discuss the point as to whether defendant district is a private corporation; that they are public is well settled by the decisions. (Fallbrook Irrigation Dist. v. Bradley, 164 U. S. 112, 159; Turlock Irrigation District v. Williams, 76 Cal. 360, 18 Pac. 379; McCord

Mercantile Company v. McIntyre, 138 Pac. 59, 60; Board of Directors of Irrigation District v. Collins, 64 N. W. 1086, 1090.) This being true, the relations of the district to the county are much simplified. Counties are subordinate agencies for the orderly government of the state within the scope of their authority, and as such are subject to the control of the legislature. (11 Cyc. 342; Laramie County v. Albany County, 92 U. S. 307.) The exact apportionment of burdens and benefits in the administration of county affairs is impracticable; e. g., the establishment of a highway, the building of a bridge, courthouse or mail must result in special benefits to particular persons or particular districts, but the doing of these things is not prohibited, nor is the expense minutely or exactly balanced against the benefits accruing. So the objection made that duties are imposed upon county offices for the benefit of particular districts incurring county expense, where no direct benefit is received, is not peculiar to the Irrigation District Law. School taxes are an example. (Sec. 2401, Comp. Stats.) But they are not a part of the county revenue proper. (Powder River Co. v. County, 3 Wyo. 597.) Likewise, high school district taxes. (Sec. 2069, Comp. Stats.) And town taxes. (Laws, 1913, p. 81.) The machinery of county government is thus employed in the levy and collection of state taxes and counties made absolutely liable for the amount legally levied. (Sec. 2380, Comp. Stats.) This has been upheld as a valid exercise of the legislative power. (State v. Commissioners, 8 Wyo. 104; Kelley v. Rhoades, 7 Wyo. 237.) So the power of the legislature to direct the use of machinery of county government in the relation of taxes and revenues necessary for the use of a public municipal irrigation district seems clear. It is fair to assume that the legislature had in view the corresponding public benefits resulting from such irrigation districts. (Board of Commissioners v. Otero, 56 Colo. 515, 139 Pac. 546.) In fact the greater part of taxes imposed and collected by counties are for the direct benefit of other communities or agencies than the county proper; note the Act of 1884. Section 3898, R. S. 1887,

authorizing Albany County to expend money for roads and bridges outside the county. Similar legislation has been elsewhere upheld. (Carter v. Cambridge Co., 104 Mass. 236; State v. Board, 85 N. E. 513.) The district law is not invalidated for failure to provide a method to reimburse the county for costs and expenses in the assessment and collection of district tax. (State v. Mudgett, 57 Pac. 351.) It would seem clear that the legislature had power to require county officers to assess the property and to levy, extend and collect the district taxes involved in this case. It is the duty of county boards to apportion and order the levying of taxes provided by law. (Sec. 1166, subdiv. 4, C. S. 1910; Sec. 2343, Comp. Stats. 1910.) And specifically it is made the duty of the board to make levies of district taxes. (Sec. 847, Comp Stats.) The district officers are without power in the premises, so it thus became the duty of the county treasurer to collect these taxes equally with other taxes. (Secs. 849, 1183, Comp. Stats.) And the general provisions of the revenue law are made applicable. (Sec. 850, Comp. Stats. 1910.) The treasurer has no discretion to omit the collection of the taxes. He is responsible under his bond for reasonable skill, diligence, good faith and honesty in the performance of his duties. (Sec. 1184, Comp. Stats. 1910.) This includes the advertising of property for sale for the collection of delinquent taxes. (Sec. 2413, Comp. Stats.) Failure to perform this duty is a misdemeanor. (Sec. 1199, Comp. Stats. 1910.) We have in this case the astonishing situation that the county commissioners have levied a tax, commanded the treasurer to collect it, and upon resort by the treasurer to the usual means of obeying these commands, have issued an order forbidding him to do so, followed by resort to the courts for an injunction; the procedure is the only one which can be resorted to for the relief of the bondholders and others interested. (Marra v. San Jacinto P. v. Irrig. Dist. 131 F. 780; Bluskowitz v. Thompson, 144 Cal. 724; Thompson v. Allen Co., 115 U. S. 550; Merchants Nat'l Bank Assn. v. Escondido Ir. Dist. 77 Pac. 937; A. T. & S. F. Ry. Co. v. Reclamation Dist. 159 Pac. 430, 173 Cal.

91; Thompson v. Perrus Ir. Dist. 116 F. 769; Board of Supervisors v. Thompson, 122 F. 869.) This district is bonded for upward of $500,000.00, with annual interest accruing in the sum of about $33,000.00, and since the bond-holders are entitled to the remedy of mandamus in requiring the assessment and levy of a tax to pay the bonds as well as the interest thereon, the plaintiffs can have no standing in the present suit, wherein they asked the court to command the treasurer not to do the very act which this court would have been bound to command the treasurer to do whenever application should be made to it. It is contended that inasmuch as the district lands have been advertised in former years without bidders, the remedy is not adequate, but is futile and ineffective. It seems strange that this argument should be joined in by the representative of the district. The logical sequence of which is that a failure to realize the tax in one year or a series of years through a sale of property would be a justification for the wholesale and entire disregard of the only remedy provided by the statute for the collection of the debt. It is a favorite illusion of the plaintiff that somebody has "reached his hand into the cash box of the county" and taken the liberty of "paying the district debts with county money." If this suggestion has any foundation in fact, it is only necessary to point out that the county commissioners are the ones who have done the reaching and the paying. The treasurer cannot do so except upon command of the board. Reference is made to the county loaning its credit or making donations to the district, a feature of the argument already discussed that the legislature is powerless to require county officers to perform duties at county expense for the benefit of the district. The authorities cited and the reasons advanced in this brief are, we think, an adequate answer to the objection based on Constitutional grounds.

POTTER, CHIEF JUSTICE.

This action was brought by the Board of County Commissioners of the County of Albany, against Bernard

Featherstone, the county treasurer of said county, to restrain and enjoin the defendant from advertising for sale, at the expense of the county, any of the lands within the Laramie Valley Municipal Irrigation District for delinquent taxes levied for the payment of interest upon the bonded indebtedness of said district, or for other district purposes. A temporary restraining order was granted, and subsequently by an amended petition said Irrigation District was made a party defendant, and specific relief was asked against it to reimburse the county for the expense of previous advertisements. A similar action having been commenced against the county treasurer and the district by C. P. Arnold, as a resident and taxpayer of the county, the latter was permitted to intervene in this action brought by the county, upon his petition filed in the other action. The treasurer and the district each appeared, the former filing a separate answer in each action. The answer of the district in the action brought by Mr. Arnold was, by written stipulation, received and considered as its answer in this case. The defendant Featherstone having been succeeded in the office of county treasurer by one H. Maynard, the latter, prior to judgment and upon his petition, was made a party defendant by order of the court, but not substituted for his said predecessor in office; his petition stating that he submitted himself to the jurisdiction of the court and consented to and requested an injunction restraining the publication of the delinquent district tax list at the expense of the county.

As the result of a trial there were special findings of fact and law apparently intended to dispose of the issues in both actions, and a judgment was entered declaring that the plaintiff and intervenor take nothing by their several actions and that the same be dismissed, that the defendant Featherstone, as treasurer, recover from them his costs, and that the restraining order be dissolved. The plaintiff and intervenor severally excepted to several of the conclusions of law and the refusal of the court to find upon the law as requested, and the defendant treasurer excepted to two findings of law. The plaintiff and intervenor have brought the case here on

error, and the defendant treasurer has filed a cross-petition in error presenting his objections to the conclusions of law excepted to by him.   The Irrigation District was made a defendant in error and has filed briefs herein, and the cause was heard upon the briefs of the several parties and also upon oral argument by counsel for each of them.

The particular cause or occasion for bringing the action when it was commenced, May 6, 1914, was the proposed inclusion of the lands in said irrigation district upon which taxes levied for that district were delinquent, in the publication in that year of the county treasurer's notice of the sale of realty for delinquent taxes, without providing for the expense thereof so as to relieve the county from liability therefor.   The county treasurer is ex-officio collector of taxes, and such publication is required as to delinquent state, county and school district taxes during or previous to the first week in June in each year by Section 2413, Compiled Statutes of 1910, which declares also that the advertisement shall include the delinquent taxes for the preceding year or years.   The notice is generally provided for by Section 2421, whereby the treasurer is required to give notice of the sale of real property for delinquent taxes by publication once a week for four consecutive weeks in a newspaper in his county, if there be one, stating the time and place of sale, with a list of the lands; and that section also provides that ten per cent upon the amount of the taxes due shall be added when lands are advertised. Another section (Sec. 2411) provides for a fee of one dollar for advertising property for sale for taxes to be charged by the treasurer, as tax collector, and collected from the taxpayer.   (See McCague Inv. Co. v. Mallin, 170 Pac. 763.)   Under the statute providing for the organization of irrigation districts, prescribing the powers and regulating the government thereof, all district taxes, whether to pay accrued or accruing interest or principal upon its bonds or to provide for the maintenance, operating, and current expenses of the district, are required to be levied by the commissioners of the county wherein the office of the district is located; the statute providing for an assessment of

the lands in the district for that purpose by the county as-
sessor, and a return by him to the county commissioners of
the total amount of such assessment. (Comp. Stat., Secs.
845, 846, 847, 848.) Such taxes are declared to be special
taxes. (Sec. 847.) The county treasurer is made district
treasurer, and it is also provided that the county treasurer
shall collect and receipt for all taxes levied for the district,
in the same manner and at the same time as required for the
collection of taxes on real estate for county purposes. That
statute also declares that the revenue laws of the state for
the assessment, levying and collection of taxes on real estate
for county purposes shall be applicable, except as therein
modified, including the enforcement of penalties and for-
feitures for delinquent taxes. (Id. Sec. 850.) And it con-
tains no provision modifying the provisions of the revenue
law concerning the sale of land for delinquent taxes.

Originally, and until 1907, when the statute providing for
the organization of irrigation districts was enacted, the
duties of a county and its officers in the assessment, levy and
collection of property taxes were confined to taxes for state,
county and school district purposes, and we understand that
it was the custom of the several counties to pay or advance
the cost of publishing the delinquent tax sale notices, usually
by its allowance as a claim against the county, awaiting re-
imbursement therefor through the subsequent collection of
the taxes with the amount authorized to be added to cover
such cost. (See Com'rs v. Chaplin, 5 Wyo. 74; 37 Pac.
370; State ex rel. v. McGibbon, Id. 82, 37 Pac. 373.) But
there is no express statutory provision for paying the ex-
pense of such publication as to irrigation district taxes in
advance of their collection by sale or otherwise, or for re-
imbursing the county for extra expense, if any, in the assess-
ment or collection of such taxes. And that is no doubt
chiefly responsible for the present litigation.

The foregoing statement of the statutory provisions, and
what is not provided for, is made here to explain the situa-
tion when the action was brought, in view of which we
suppose the parties to have acted in framing the pleadings

and issues in the case. The facts are not in dispute, and might be stated by reciting the substance of the court's findings. But a brief reference to the pleadings seems advisable to show the grounds alleged for equitable relief, for both actions were brought as in equity and relief is prayed for under that branch of the court's jurisdiction.

The original petition alleged the due organization of the irrigation district under the statute providing therefor; the issuance of district bonds in the sum of $541,000, pursuant to the statute, constituting a lien upon the lands of the district; the fact that the county treasurer, the defendant for the four last preceding years, and prior to that period, in the year 1910, his predecessor in office, had advertised the lands in the district for sale to collect the accrued bonded indebtedness of the district, which had not resulted in any sale, because no one had bid for any of the lands, and none was bid in by the treasurer; that the cost of such advertising had been paid out of the county treasury for which the county had not been reimbursed; that the county board, by written resolution, in January, 1914, had directed the defendant treasurer not to advertise said lands for sale, and that the county would no longer pay therefor; that said defendant, without any assurance that the cost would be paid by some other means than out of the public revenue of the county, was again threatening to advertise such lands for sale, and without any application therefor; that defendant has no property out of which a judgment to reimburse the county could be collected; and that he threatens to increase the cost by duplicating the descriptions of the land by including those subject to the district taxes in a separate list. The prayer of that petition was for an injunction restraining the defendant "from advertising said lands for sale for the collection of any sum or sums of money arising out of any defaulted payments in said bonded indebtedness of the lands within said district, unless the expense thereof be provided for by a "proper guarantee or deposit of the expense." There was also a general prayer for all other proper relief.

. The amended petition contains substantially the same allegations, but alleges that the defendant was again proceeding to advertise the district lands at the expense of the county, acting as county treasurer and ex-officio collector of taxes and not as district treasurer; that such advertisement was without authority of law and in excess of defendant's power, and would involve the county in a multiplicity of suits without remedy to recover the expense incurred for the reason that the irrigation district is insolvent and without funds from which such expense could be recovered. That the defendant claiming such expense to be a charge against the county, has caused bills to be presented against it for such advertising in previous years which were erroneously and improperly allowed by the commissioners, upon the demand of the newspaper which published the same. That the defendant has not paid any of such expense out of district funds or otherwise, and refuses to apply the funds in his hands as district treasurer toward the payment thereof. That such expense has increased from year to year, causing a waste of public funds; that the total cost during the several preceding years was $1,353.66, and that the threatened publication in 1914 would cost $787.18. That the bonded indebtedness of said district exceeds four per cent of the assessed value of the land therein, and is void. That the district is the owner of valuable irrigation works outside its exterior boundaries which are not assessed. That the bonds are a lien upon all the lands in the district reserved by the personal contract of the vendor and vendees thereof. That the expense to the county in keeping the books of the district and attempting to collect the taxes due upon its bonds and for the management of said enterprise equals the expense of assessing and collecting all state and county taxes in the county, requiring the employment of deputy treasurers and assessors and an extra expense of more than one hundred dollars a month.

The prayer of that petition is for a temporary restraining order, that on final hearing the defendants be perpetually enjoined from advertising said lands except at the cost and

expense of the irrigation district; that an accounting be had between the district and the county as to the money already paid for advertising said lands for district debts and charges; that the said defendant Featherstone, as treasurer of the district, be required to pay the county the sum already paid for such advertising, with interest. That said sum with interest thereon be declared to be a lien upon all of the property of the district superior to the lien of the bonds; that the said bonds be declared null and void so far as constituting a municipal or public charge, and that the county treasurer and ex-officio collector of taxes, and the county assessor, be enjoined from keeping the books of said district, and from collecting or attempting to collect, either the principal or interest upon said bonds, or the expense for the maintenance of said district. And such other and further relief as the plaintiff may be entitled to in the premises. The petition in the intervenor's action contains similar allegations, and prays the same relief.

That the lands in said district upon which there were delinquent district taxes had been advertised and offered for sale during the years 1910 to 1913, inclusive, and that it was again proposed in 1914 to publish a similar notice is admitted by the pleadings; also that the expense of previous publications had been paid by the county, as alleged in the amended petition; that district bonds had been issued in the amount alleged; that interest had accrued thereon during the several years, that certain defaults had occurred in the payment thereof, and that none of the advertised lands had been bid in by the treasurer. It was further admitted that the lands to be offered for sale for delinquent district taxes were advertised in a list separate and distinct from the lands to be offered for delinquent state, county and school district taxes, resulting in some instances in a duplication of descriptions. But the defendant alleged: That the assessment roll and tax list prepared for said district were necessarily separate and distinct from the assessment roll and tax list for state, county and school taxes, and separate and distinct warrants were delivered to the treasurer in each year for the collection

of the district tax, and that by advice and direction of the board of county commissioners the said lists were kept separate to avoid making the county chargeable with the payment of the district taxes either by bidding in the lands at the tax sale or otherwise. As there was no reply, the alleged fact that the delinquent district taxes were advertised in a separate list by the advice and direction of the county board stands admitted.

The answer of the irrigation district, which is here only as one of the papers filed in the action brought by Mr. Arnold, together with other papers certified to by the clerk of the district court, as papers filed in that action, contains certain admissions and denials, referring to the petition in that action, which we think unnecessary to recite, except the denial that the expenses of the several publications of the delinquent district tax list were improperly and erroneously allowed as claims against the county, and the averment that if such expenses were legal they were a proper charge against the county and not against the district. Further, in that connection, said answer admits that the expense had increased from year to year, and alleges that continuing to advertise the sale of the lands for district taxes is a useless waste of public money, and that the county treasurer and his successors should be permanently restrained therefrom. Said answer further alleges that the district money in the hands of the county treasurer was collected by taxation for the operating expenses of the district, and that the treasurer is without authority to divert the same from the purposes for which it was raised or to apply it upon any indebtedness caused by advertising the delinquent tax list. And the district, by its said answer, joined with the plaintiffs in asking that the treasurer be restrained from publishing the said delinquent list for 1914 and subsequent years.

It is unnecessary to recite the evidence, since the facts are not disputed, and for the further reason that all of the evidence is not in the record here; the bill of exceptions disclosing that at the conclusion of the testimony an agreed

statement of facts was offered, which is not embraced in or attached to the bill, and no such statement is found among the papers in this case. One of the papers certified as having been filed in the other action purports to be an agreed statement of facts between the plaintiff therein and the irrigation district, and is marked as filed in that action on May 1, 1915. And another paper sent here with the papers in that case purports to be an agreement between counsel representing the plaintiff in this case and the defendant treasurer as to the facts admitted by the pleadings. But neither of those papers is identified as the agreed statement offered in evidence in this case.

At the request of the intervenor, the court stated in writing its findings of fact and conclusions of law. The court found, among other facts not necessary to state because of the admissions of the pleadings, the following:

That the costs of the previous publications during the years 1910 to 1913 inclusive, paid by the county, was $1,353.66. That it had increased from year to year, and that to publish the notice prepared for publication in 1914 would cost $787.18. That no part of the money so expended by the county had been returned to the county treasury, except the sum of $120.15, which was collected through the redemption of lands sold. That $189.91 penalties and interest on lands sold and redeemed had been turned into the irrigation district fund. That there had been an annual increase in the delinquent list. That the treasurer kept no separate list distinguishing the sales for irrigation district taxes from sales for state and county taxes. That the treasurer was proceeding as county treasurer to advertise certain lands as in former years when he was restrained by the order of the district court commissioner. That no land was sold at any of the advertised sales for district taxes except a few town lots in 1912 and 1913, and one acreage tract in 1913. That neither the bond holders nor the irrigation district had requested the publication of either notice, or made any provision for paying the cost of such publication. That there was in the hands of the defendant Featherstone at the time

of filing his answer the sum of $1,700 belonging to the district and that of said sum there remained in the hands of his successor $220 belonging to the bond account and $1,-441.41 belonging to the district maintenance fund.

There was no exception to any finding of fact. But, as recited in the findings, the court denied the request of the intervenor to find as a fact that the advertisement and re-advertisement of the list of irrigation district lands for delinquent district bond assessments was futile and a waste of money, to which the intervenor and the district excepted.

The intervenor requested findings upon the law substantially as follows: 1. That the diversion of county funds for paying the cost of said advertising is illegal. 2. That such expense is a proper charge against the irrigation district and not an expense to be paid out of county funds raised by general taxation. 3. That the irrigation district is liable to reimburse the county for the money expended in the publication of said delinquent list. 4. That the defendant Featherstone, county treasurer, must reimburse the county for the money so expended. 5. That the bonded indebtedness of the district does not constitute a public charge upon lands and property outside of the district, and that the direct or indirect use of county funds either in payment of such indebtedness or in an attempt to collect the same is illegal. 6. That the district must bear its own financial burden in advertising delinquent lands for sale in the management of district affairs, without calling on the county. 7. That a levy to raise a fund for the payment of irrigation district bonds, or other district purposes, is not strictly a tax. The court refused the requests, reciting them, and stating the refusal to so find in paragraphs numbered one to seven, inclusive, of the conclusions of law, and to the refusal of each request the intervenor excepted.

The conclusions of law were stated in paragraphs eight to twelve, inclusive, under that head substantially as follows: 8. That the restraining order should not have been granted, and should be dissolved, and this action dismissed at the cost of the plaintiff. To that finding the plaintiff excepted.

9. That it is the duty of the county treasurer, when causing a notice of lands for defaulted irrigation district taxes or assessments to be published (the necessity of which the court did not pass upon) to publish said notices of sale at the expense of the county, the county to be reimbursed therefor in the same manner as when sales of realty are advertised for delinquent county or state taxes. To that finding the plaintiff and intervenor severally excepted. 10. That the general provisions of the statute for the sale of lands for delinquent county and state taxes govern the sale of lands within an irrigation district for delinquent special district taxes, including taxes to pay district bonds. And to that finding, so far as it relates to the officials of the county in their capacity as county officers, the expenditure of public moneys of the county, and the classification of installments due under the district bonds as taxes, the plaintiff and intervenor severally excepted. 11. That the general revenue laws of the state providing for the sale of lands for delinquent county taxes is applicable to the collection of defaulted payments on irrigation bonds and irrigation assessments, and it is the duty of the county treasurer to bid in the lands not sold for district taxes for lack of bidders, and that the county has a statutory lien thereon for the costs incurred by the county in advertisements for the same, prior and superior to any other lien, whether created prior or subsequent to the sale. To the part of that finding requiring the county treasurer to bid in the lands the plaintiff and intervenor severally excepted. And to the part relating to a lien in favor of the county the defendant Featherstone excepted. 12. That the duty of the county treasurer to so bid in the lands is ministerial and attaches by operation of law, and that all lands not sold for want of bidders are as a matter of law deemed to have been bought in by the county and should be placed upon a separate list and not re-advertised; said finding being expressly limited to district assessments and defaulted interest on district bonds. To that finding the defendant Featherstone excepted, and to so much of it as applies to assessments for district maintenance tax the

district excepted. The court refused to find as a matter of law that the county is entitled to penalties and interest, or that the county is entitled to recover from the irrigation district the amount of penalties and interest collected and turned over to the district. And to that the plaintiff, county and intervenor severally excepted.

The several refusals to find upon the law as requested are assigned as error, the refusal of each request being separately assigned; also the conclusions of law that the sale of lands for delinquent irrigation district taxes is governed by the general statute regulating the sale of realty for county and state taxes, and that the action should be dismissed at plaintiff's cost. And it is further claimed by the petition in error that the judgment is contrary to law; that the court erred in vacating the restraining order and refusing a permanent injunction, in overruling the motions of the respective plaintiffs in error for a new trial, and not entering judgment for plaintiffs on the findings of fact. The defedant Featherstone's cross-petition in error alleges error in the 11th and 12th conclusions of law.

It will be observed from the foregoing that the principal question sought and intended to be litigated is the liability of the county for the expense of publishing the tax collector's notice of the sale of lands for delinquent irrigation district taxes. But we are met at the threshold with the question whether the case is a proper one for the exercise of equitable jurisdiction. Nothing concerning the fact of the levy of the district taxes aforesaid or the assessment therefor is alleged in the petition in either action or shown by the evidence, and we must therefore assume that such taxes were duly levied as required by the statute. The irrigation district statute provides that the county treasurer shall be liable upon his official bond and to indictment and criminal prosecution for malfeasance, misfeasance, or failure to perform any duty therein prescribed. (Comp. Stats. 1910, Sec. 849.) Thus the case presents this situation: That the county board having performed its duty under the statute by levying the taxes thereby required, is seeking to enjoin

the treasurer from performing the duty of collecting such taxes, imposed upon him under the statutory penalty aforesaid; and upon the seemingly anomalous ground of preventing the use of county funds in paying the expense of an' act required of him in performing that duty, for which, it is alleged and contended, the county is not liable.

If such expense is not legally chargeable against the county, then the matter is entirely within the control of the county board, unless suit should be brought to recover the amount from the county, for the board may refuse to allow or pay any claim therefor when presented; and if suit should be brought upon the claim the fact that it was not a proper charge against the county would constitute a complete defense. Upon the averments of the petition and the contentions denying the county's liability for such expense, therefore, there is not only no necessity for an injunction, but there is an adequate and complete remedy at law. If the county is bound to pay such expense, then, as to the ground denying such liability, neither of the plaintiffs would be entitled to an injunction.

Neither the county nor the intervenor, upon the facts, is in a position which would allow them to prevent the collection of the taxes in question, through the aid of an injunction. It is not alleged or shown that either is the owner of any land proposed to be advertised by the treasurer's notice, or of any property subject to a tax levied for the irrigation district. Nor does it appear that they have any interest in the matter of the collection of the district taxes, except to prevent or avoid the incurring of a county liability for the expense of publishing the notice aforesaid, or the use of county funds in paying such expense. The general rule is that one who does not own real estate which it is sought to subject to a tax, and who is not, therefore, liable to the tax, will not be allowed the aid of an injunction to prevent its enforcement, and that an action to enjoin a tax should be brought by the taxpayer or taxpayers affected by it. And upon that principle the county could not maintain an action to enjoin generally the collection of these taxes, nor could

the intervenor do so for he sues not in the interest of any one liable or sought to be made liable to the tax or whose property is sought to be made subject thereto, but in the interest of the county or such general taxpayers as are interested only in the use of county funds to enforce the tax. (1 High on Inj., 4th ed., Sec. 573; 2, Joyce on Inj., Secs. 1228, 1229; Board of Education v. Guy, Co. Auditor, 64 O. St. 434 (60 N. E. 573); State, ex rel. Ewing, et al., v. Board of Education, 72 Mo. 436; Village of Nunda v. Village of Chrystal Lake, 79 Ill. 310; Stiles v. City of Guthrie (3 Okla. 26), 41 Pac. 383; Center Township v. Hunt, 16 Kan. 430; State, ex rel. v. McLaughlin, Co. Treasurer, 15 Kan. 228, 22 Am. Rep. 264.)

In State v. McLaughlin, supra, a suit in the name of the state to restrain a county treasurer from collecting certain school district taxes, the Kansas Supreme Court, by Brewer, Justice, said:

"It is obvious that the state as a state has no direct interest in this controversy, any more than in a controversy between individuals. The payment of these bonds may be illegal, but their payment works no greater wrong to the state than the payment by a single individual of an illegal debt. The single individual may, if he chooses, by appealing to the ordinary proceedings of the law, protect himself against such illegal payment. So may the many taxpayers. * * * As private citizens, unless specially authorized, may not interfere to compel the performance of a mere public duty, or restrain the doing of a mere public wrong, so the state, having no direct interest, may not interfere to protect individuals from the illegal acts of a public officer where such individuals have, in the ordinary course of the law, ample and adequate means of protection." And in Center Township v. Hunt, supra, the same court said:

"Now suppose they (township bonds) are invalid, still the plaintiff (the township) has no right to enjoin the tax levied upon the taxable property of the various individuals of the township to pay the interest on them. If any tax should be assessed against the plaintiff, the plaintiff might

then perhaps maintain an action to enjoin the tax. But it cannot maintain an action to enjoin a tax assessed against the other taxpayers of the township. One taxpayer cannot enjoin a tax levied against another taxpayer. Each taxpayer must sue for himself, either in an action brought by himself alone, or in an action brought by himself and others with like interests." In the Oklahoma case of Stiles v. City of Guthrie, supra, the city joined with certain residents and taxpayers of the city in an action to enjoin the county treasurer from collecting an alleged illegal tax. The court said:

"The city of Guthrie had no interest whatever in the subject matter of this action. There is no allegation that it had any property which was subjected to this illegal tax, or against which it is claimed that the illegal tax was a lien, and was attempted to be enforced; nor do we know of any law in this territory under which this tax could be a lien against the property of a public corporation, such as a city devoted to public use. * * * The city of Guthrie has no more interest in the question as to whether or not a property owner shall pay an illegal county tax than some other city in the territory, or any of the states would have. The property owner may, in fact, be a resident and citizen of one of these other cities, and the city is under no moral or legal obligation to look after his private interests."

In the Ohio case cited, Board v. Guy, a township board of education sought to enjoin the collection of a tax, levied by the commissioners of the county for the purposes of a newly created joint subdistrict, on the ground that the proceedings for the creation of such district were irregular and void. It was held that the plaintiff board had no right to maintain the action. The court said:

"It is true that the board of education is made by statute a body corporate with capacity to sue and be sued; but capacity to sue is one thing, and right to maintain a particular action is another thing. The plaintiff has no right to maintain this action, and the second ground of demurrer is well taken; and might probably have been raised without

demurrer.  *  *  *  A board of education is not a tax-payer; taxes may be levied for its benefit, but it pays none. It has, then, no interest in the subject of the action, nor is it a part of its duty to prosecute it."

In School District v. Commissioners, 15 Wyo. 73, 86 Pac. 24, 11 Ann. Cas. 1058, this court held that a county board had no interest which would enable it, on the ground that a school district in the county was illegally organized, to maintain an action to enjoin the county treasurer from paying to such district moneys collected as taxes levied for the purposes of the district.

The court's refusal to find as a fact that the advertisement of the lands for delinquent taxes was futile and a waste of money is not assigned as error, and does not seem to be insisted upon, for, although referred to as an averment of the petition, it is not discussed in the brief of plaintiffs in error. But the failure to sell the lands offered at former sales for taxes of preceding years, owing to a lack of bidders, if alleged as an independent ground for injunction, would have but little, if any, force. It would not necessarily follow from that fact that there would be no bidders at the sale proposed to be advertised or any future sale under a like notice. And we do not think the court could assume that there would be none. But if such fact could be assumed, or if established by proof, which would obviously be difficult, if not impossible, the court would not, in our opinion, be justified in enjoining on any such ground an act of the tax collector required by statute as one of the steps provided for the enforcement of a tax. The remedy for such a condition, if not already provided by the statute, is for the legislature to prescribe. Notwithstanding a similar condition in Colorado, viz: a lack of purchasers for lands offered at tax sales, and an increasing number of delinquent tax payers from year to year, it was held that bondholders were entitled to mandamus to compel a levy against the lands of an irrigation district to satisfy a judgment upon interest coupons. (Norris v. Montezuma Valley Irr. Dist., 248 Fed. 369.)

Although the injunction is prayed for in a conditional form, its effect, if granted in that form, viz: restraining the publication at the expense of the county, or unless other means should be provided for paying the cost of the publication, might be to prevent the collection of the delinquent district taxes. That was the effect of the restraining order issued at the commencement of the action for it was unqualified, and also directed the treasurer to withdraw from publication any advertisement that may have been handed to a newspaper for that purpose. And unless the statute provides for meeting the expense prior to its collection from taxpayers or upon tax sales, without the use of county funds, the effect of an injunction restraining publication at the expense of the county would probably be the same as an injunction absolute in form. In view, therefore, of the possible effect of the injunction applied for and the confusion it would cause in the collection of the delinquent taxes, the action in that respect should be considered, we think, as an attempt by aid of injunction to prevent the enforcement of such taxes, and as within the rule above stated denying to one in the position of the county or the intervenor the right to an injunction for that purpose.

The statute provides that bonds of an irrigation district and the interest thereon shall be paid by revenue derived from an annual assessment upon the real property of the district, and that such property shall be and remain liable to be assessed for such payments in the manner therein provided. It provides for an assessment and levy in each year as above stated for the purpose of raising such revenue, and for the collection of the taxes by the county treasurer, and declares that for such purposes the revenue laws of the state for the assessment, levying and collection of taxes on real estate for county purposes, except as therein modified, shall be applicable, including the enforcement of penalties and forfeitures for delinquent taxes. Having levied the taxes which the treasurer was proceeding to enforce, the county board should not be heard to question his right to proceed in the manner provided by the statute. Certainly

not, on the ground alone that the county might be required to pay the expense or that it might lay the foundation for a claim and suit against the county therefor. If the county is legally liable for such expense it is because the obligation is created by the law, as a result of a proceeding provided for and commanded by the statute, rather than by the treasurer, who is given no discretion as to whether the lands shall or shall not be advertised for sale. If the county would not be liable for the expense, the fact that a claim might be presented against it therefor, or that it might be sued thereon, would not cause a multiplicity of suits giving a court of equity jurisdiction. Indeed, a single suit would dispose of the matter.

Leaving out the question of the propriety of granting an injunction affecting the collection of taxes levied for the benefit and protection of bondholders in an action where no bondholder is a party, which might well be considered if necessary, we fail to find upon the allegations or the facts any ground for injunction, or, as between the plaintiff or the intervenor and the defendant treasurer, any ground for equity jurisdiction.

The plaintiffs in error are not in any better situation upon their demand for relief against the irrigation district, with respect to this question of jurisdiction. If the district is indebted to the county for the money voluntarily paid upon claims alleged to have been erroneously allowed for publishing the delinquent district tax list with the tax sale notices of previous years, the amount is recoverable at law, and as conveniently as in equity. An accounting is prayed for, but the facts do not present a case for an accounting in equity as the only relief to be granted. It is not a case of mutual and complicated accounts. The account, if any, is all on one side and consists of four items of money paid. No discovery is sought and there is nothing to show that a discovery is required. Nor is the demand for an accounting aided by any other equitable relief in the cause. There seems to be nothing inherent in the situation, and nothing is disclosed, that would prevent the matter from being as fully

investigated at law as in equity.    (1, Storey's Eq. Jur. (Redf. ed.), Secs. 458, 459; 4 Pomeroy's Eq. Jur. (3rd ed.), Secs. 1420, 1421; 1 C. J. 612-616.)

For the reasons stated, neither of the plaintiffs in error, the original plaintiff and the intervenor, have any right to maintain the action.    And, therefore, without considering any other question presented in the case, the judgment will be affirmed on the jurisdictional ground aforesaid.

*Affirmed.*

BEARD, J., and BLYDENBURGH, J., concur.